Robert R. EASTBURN, Petitioner and Appellee,

v.

J.K.H., a minor child, Respondent and Appellant,

and

K.H., father of the above named child, Respondent.

Civ. No. 11139.

Supreme Court of North Dakota.

Aug. 20, 1986.

Robin Huseby, Asst. State's Atty., Valley City, for petitioner and appellee.

Roger R. Weisenburger, Valley City, for appellant.

MESCHKE, Justice.

J.K.H. appeals from a juvenile court order transferring him from juvenile court to adult court for prosecution of charged criminal offenses.[1] We affirm.

On October 3, 1985, a juvenile court petition was filed, alleging that J.K.H. had been taken into custody on August 20, 1985 and charged with eighteen counts of gross sexual imposition in violation of § 12.1–20–03, N.D.C.C. The victims ranged in age from eight years to seventeen years. J.K.H. was seventeen years and eight months old when the petition was filed. He underwent a mental evaluation in the adolescent unit at the State Hospital. While this evaluation was going on, the juvenile court supervisor filed a transfer petition to have J.K.H. prosecuted as an adult.

At the transfer hearing on October 23, 1985, some of the victims were available to testify. But, after preliminary discussions between counsel and the court, the testimony of social workers and an officer was used instead, to spare the young girls the trauma of testifying. This testimony summarized their interviews with the victims. The testimony of police officers summarized their interviews with J.K.H. Testimony regarding availability of programs and amenability to treatment was presented by Gordon Boyer of the State Industrial School, Dr. Marco Rancier of the State Hospital and Donna Pretzer, a social worker at the State Hospital. On November 27, the juvenile court determined that prosecution of J.K.H. should be transferred to adult court.

---

1. An order of the juvenile court transferring jurisdiction to the district court under § 27–20–34, N.D.C.C., is appealable as a final order of the juvenile court under § 27–20–56(1), N.D.C.C. In prior cases we have refused to specifically so state. See *In Interest of P.W.N.*, 301 N.W.2d 636 (N.D.1981). Most recently in a collateral appeal the juvenile argued that orders transferring jurisdiction to the district court were not appealable. See *State v. Willey*, 381 N.W.2d 183 (N.D. 1986).

The right of appeal is purely statutory and is a jurisdictional matter which this court may consider *sua sponte*. See, e.g., *Davis v. State Job Service*, 365 N.W.2d 497 (N.D.1985). Although the petitioner did not raise the issue of whether the order was appealable but rather conceded it was appealable during oral argument in answer to questions from the justices, jurisdiction of this court may not be enlarged or conferred by consent or stipulation of the litigants. See, e.g., *Reub's Minot Camera, Inc. v. General Elec. Cr. Corp.*, 201 N.W.2d 877 (N.D.1972). If an attempted appeal fails for lack of jurisdiction, it is the duty of this court to dismiss an appeal on our motion. *Davis, supra.*

Because the issue was raised, *sua sponte*, and this appeal has not been dismissed, it should now be evident that orders transferring jurisdiction from juvenile court to district court are appealable orders. Section 27–20–56(1) provides that an aggrieved party may appeal from "a final order, judgment, or decree of the juvenile court" and an order transferring jurisdiction from juvenile court to district court would be the final order of the juvenile court if it is upheld. Therefore, a fair interpretation of the applicable statutes is that the order is appealable.

Juveniles who appeal an order of the juvenile court transferring jurisdiction to district court should be cautious, however, because subsection 2 of § 27–20–56, N.D.C.C., provides that an appeal does not stay the order, judgment, or decree appealed from unless this court otherwise orders on application and hearing if suitable provision is made for the care and custody of the juvenile. Thus, unless a stay is ordered by this court, the district court could proceed to try the juvenile as an adult during the time an appeal from the transfer order is pending.

J.K.H. appeals the transfer, asserting that hearsay evidence was improperly admitted, that without the hearsay evidence there was not sufficient evidence to find reasonable grounds that he committed the alleged acts, and that the evidence was also insufficient to support the court's finding that J.K.H. was not amenable to treatment as a juvenile through available programs.

■ Our review in cases arising under the Uniform Juvenile Court Act, Chapter 27–20, is not limited by the "clearly erroneous" standard of Rule 52(a), N.D.R.Civ.P. Rather, our review is based "upon the files, records, and minutes or transcript of the evidence of the juvenile court, giving appreciable weight to the findings of the juvenile court." § 27–20–56(1), N.D.C.C.; *In the Interest of C.M.E.*, 385 N.W.2d 102, 103 (N.D.1986). We reexamine the evidence in a manner similar to the former procedure of trial de novo. *In the Interest of J.K.S.*, 321 N.W.2d 491 (N.D.1982).

Section 27–20–34, N.D.C.C., permits transfer to adult court for prosecution if certain circumstances exist. J.K.H. challenges pertinent findings "that there are reasonable grounds to believe that: (a) [t]he child committed the delinquent act alleged; (b) [t]he child is not amenable to treatment or rehabilitation as a juvenile through available programs; (c) [t]he child is not treatable in an institution for the mentally retarded or mentally ill; ..." § 27–20–34(1)(b)(4), N.D.C.C.

■ This court has determined that reasonable grounds to believe the child committed delinquent acts must be established by witnesses who are available for confrontation and cross-examination. *In the Interest of P.W.N.*, 301 N.W.2d 636, 640 (N.D. 1981). This requirement usually precludes the use of hearsay evidence about the delinquent acts, such as testimony or written reports about interviews with participants. Nor can a valid confession made by the child out of court "support an adjudication of delinquency unless it is corroborated in whole or in part by other evidence." § 27–20–27(2), N.D.C.C.

■ The testimony of social workers that J.K.H. committed the acts charged was clearly hearsay. J.K.H.'s brief explains that no objection was made "to the hearsay evidence that was about to be introduced for the reason that the Court had advised that it would be received." But, we will not entertain an objection which is raised for the first time on appeal from a juvenile court proceeding unless the objection concerns obvious error that affects a substantial right of the juvenile. *Huff v. K.P.*, 302 N.W.2d 779, 784 (N.D.1981). In this case, witnesses were available who could have testified directly about the delinquent acts if J.K.H. had objected to using the social workers' accounts of their interviews. J.K.H. does not contest the facts presented in the hearsay testimony, but only claims that the facts should have been given by direct testimony of the victims. Therefore, we conclude that no substantial right of J.K.H. was affected and that his failure to object at the hearing precludes consideration of his objection on appeal. We also conclude that the evidence, including testimony by police officers about admissions by J.K.H., was sufficient to establish reasonable grounds that J.K.H. committed the delinquent acts.

■ J.K.H. also argues that the evidence was insufficient to establish that he was not amenable to treatment as a juvenile through available programs, or to treatment in an institution for the mentally ill or the mentally retarded. The witnesses on treatment all indicated that J.K.H. needed treatment and could probably benefit from treatment.

Testimony of the personnel from the State Hospital and the written evaluation report from the State Hospital demonstrated that J.K.H. had a behavioral problem, but was not mentally ill. Although J.K.H. appeared to be a slow learner, he was not mentally retarded and functioned in the "dull normal range of intelligence." Any treatment program would take at least a year and could not be accomplished at the State Hospital's adolescent unit, which is set up for short term evaluation commit-

ments rather than for long term remedial commitments.

Gordon Boyer testified that the State Industrial School would not be appropriate for J.K.H. because it does not have a program for sex offenders and it does not usually accept persons who can't be helped before reaching their 18th birthdays. Mr. Boyer further stated that no other juvenile program or facility in the state was likely to accept J.K.H. because of his age and the nature of his problem. Although placement in an out-of-state program was theoretically possible, Mr. Boyer testified that approval for, and payment for, out-of-state placement depended on action by a county social service board, which he viewed as highly improbable. No evidence was presented on the actual availability of any out-of-state program for J.K.H.

This dismal record about "available programs," with petitioner's showing of a lack of any available program to treat J.K.H., leads us to reluctantly conclude that J.K.H. is not amenable to treatment through any program available to him as a juvenile. Also, it is plain that J.K.H. is not mentally ill or mentally retarded.

Accordingly, the order of the juvenile court transferring J.K.H. to adult court for prosecution of charged criminal offenses is affirmed.

ERICKSTAD, C.J., and GIERKE, VANDE WALLE and LEVINE, JJ., concur.

LEVINE, Justice, specially concurring.

Since it appears from the record that there are no suitable treatment programs available for J.K.H., I find that I must concur with the decision authored by Justice Meschke. The unfortunate result in this case highlights the inadequacy of existing services for children, one of the many problems identified by the Governor's Commission on Children and Adolescents at Risk (CAAR Commission). CAAR Commission, Committee Report (July 28, 1986).

J.K.H. has a behavioral problem, but he is not mentally ill; he appears to be a slow learner, but he is not mentally retarded. All witnesses on treatment indicate that J.K.H. needs treatment, but for one reason or another he is not amenable to treatment at their facility. Out-of-state treatment was suggested as a possible solution. According to the CAAR Commission's report, if children or adolescents are in need of long-term residential care, like J.K.H., they are sent out of state because there are no long-term residential treatment facilities in North Dakota. Approximately 40 youngsters per year are sent out of state for treatment at an average cost of $30,000 per year per child. CAAR Commission Report, *supra* at 19. Out-of-state treatment is clearly not a cost-effective solution to the problem of gaps in the services currently being provided in North Dakota.

Gaps in service is just one of many pressing problems discussed in the CAAR Commission's comprehensive report on troubled children and the resources available to them. The findings and recommendations of the Commission will be reported to the Legislative Council which in turn will report to the Fiftieth Legislative Assembly:

"The Commission recommends that the Governor create by Executive Order and the Legislature reaffirm by resolution an inter agency Children's Coordinating Cabinet to promote coordination, policy development, and program development at the state level.... The Cabinet should include the administrators of the departments, program directors, and the highest level of policy makers in the children and adolescent service areas within the Departments of Human Service, Department of Health and the Department of Public Instruction plus those from the Supreme Court, the Attorney General's Office, and Job Service of North Dakota."

It is my hope that the goals of the Commission to provide suitable treatment programs will be realized so that future cases of this nature can be decided differently.