552 N.W.2d 324 (1996)
In the Interest of C.R.M., a child.
Stephen R. DAWSON, Petitioner and Appellee,
v.
Hector MARTINEZ, Anna Martinez, and C.R.M., Respondents and Appellants.
Criminal No. 960010.
Supreme Court of North Dakota.
June 27, 1996.
*325 John Tainter Goff, Cass County State's Attorney, Fargo, for petitioner and appellee.
Zenas Baer, Hawley, Minn., for respondents and appellants.
VANDE WALLE, Chief Justice.
C.R.M., a juvenile, has appealed an order transferring prosecution of criminal charges against him from juvenile court to the district court under § 27-20-34(1)(b), N.D.C.C.[1] We affirm.
On the evening of November 15, 1995, seventeen-year-old C.R.M. was driving a car in which five other juveniles were riding. C.R.M. and the other juveniles were arrested after it was alleged one of them killed Cheryl Tendeland with a sawed-off shotgun while she was sitting in a car in West Fargo, North Dakota.
The State moved to transfer prosecution from juvenile court to the district court for trial of C.R.M. as an adult, and filed a second amended petition alleging in part:
"IV.
"That certain facts bring said child within the jurisdiction of this Court as a delinquent child, as follows:
"Count 1: That the juvenile is alleged to be delinquent in that he was involved in committing the unlawful act of MURDER in violation of Section 12.1-16-01(1)(c), *326 N.D.C.C. in that ... on or during the late evening hours of November 15, 1995, in West Fargo, ND, the above-named juvenile,..., acting with other juveniles, committed the offense of attempted robbery and during the course of said attempted robbery one of the participants, ..., caused the death of Cheryl Tendeland by shooting her in the head with a shotgun.
* * * * * *
"Count 2: That the juvenile is alleged to be delinquent in that he was involved in committing the unlawful act of ACCOMPLICE TO ATTEMPTED ROBBERY in violation of Sections 12.1-22-01 and 12.1-06-01, and 12.1-03-01, N.D.C.C....
"Count 3: That the juvenile is alleged to be delinquent in that he was involved in committing the unlawful act of CRIMINAL STREET GANG CRIME in violation of Sections 12.1-06.2-02 and 12.1-03-01, N.D.C.C...."
After a hearing on December 20, 1995, the juvenile court found:
"2. The Court finds probable cause to believe that an attempted robbery was being committed on November 15, 1995, and that [C.R.M.] assisted in the commission of said attempted robbery, which resulted in the death of Cherryl Tendeland, and that [C.R.M.] committed the offense of felony Murder under North Dakota law as charged in Count One of the Second Amended Petition."
The court transferred Count 1 to district court under § 27-20-34(1)(b), N.D.C.C., and transferred Counts 2 and 3 under § 27-20-34(4), N.D.C.C. C.R.M. appealed.
C.R.M. contends that the juvenile court erred in ruling that the North Dakota Rules of Evidence do not apply to a transfer hearing, and in allowing Detective Gregory Warren to give hearsay testimony over C.R.M.'s objection. We disagree.
Section 27-20-34(1)(b), N.D.C.C., requires the transfer of certain serious offenses from juvenile court to the district court:
"1. After a petition has been filed alleging delinquency based on conduct which is designated a crime or public offense ... the court before hearing the petition on its merits shall transfer the offense for prosecution to the appropriate court having jurisdiction of the offense if:
* * * * * *
"b. The child was fourteen years of age or more at the time of the alleged conduct and the court determines that there is probable cause to believe the child committed the alleged delinquent act and the delinquent act involves the offense of murder or attempted murder; gross sexual imposition or the attempted gross sexual imposition of a victim by force or by threat of imminent death, serious bodily injury, or kidnaping;...."
Chapter 27-20, N.D.C.C., does not specify whether or not the evidence rules apply to juvenile court hearings. Section 27-20-24(1), N.D.C.C., provides: "Hearings under this chapter must be conducted by the court without a jury, in an informal but orderly manner." Section 27-20-27(1), N.D.C.C., provides: "A party is entitled to the opportunity to introduce evidence and otherwise be heard in his own behalf and to cross-examine adverse witnesses."
C.R.M. relies on this court's decision in In Interest of P.W.N., 301 N.W.2d 636, 640 (N.D.1981), to preclude the use of hearsay evidence:
"We believe that the `essentials of due process and fair treatment' required at transfer hearings by Kent v. United States, supra, [383 U.S. 541, 86 S.Ct. 1045, 16 L.Ed.2d 84] and the requirements of § 27-20-27(1), NDCC, necessitate that evidence establishing reasonable grounds to believe that the child committed the delinquent act must be produced by witnesses available for cross-examination."
C.R.M. reads P.W.N. too broadly. A decision's precedential value is measured by the context of its particular facts. P.W.N.'s requirement of evidence "produced by witnesses available for cross-examination" was based on the same holding in In Interest of K.G., 295 N.W.2d 323 (N.D.1980). In K.G., no witnesses testified at the transfer hearing on the question of whether or not there were *327 reasonable grounds to believe that K.G. committed murderthere were only remarks by the state's attorney repeating statements made to him. In P.W.N., on the other hand, there was a witness, Deputy Steven Kremer, who testified and was available for cross-examination. P.W.N. does not declare that a witness available for cross-examination may not present hearsay testimony at a transfer hearing.[2]
Like Rule 5.1, N.D.R.Crim.P., on preliminary examinations, § 27-20-34(1)(b), N.D.C.C., requires a finding of "probable cause to believe" that a person committed an act. "Probable cause is a minimal burden of proof. It is generally employed in the judicial decision-making process when the effect of the determination has temporary or short-term consequences." In Interest of M.D.N., 493 N.W.2d 680, 684 (N.D.1992). "Rule 5.1, N.D.R.Crim.P., authorizes both the admission of hearsay and reliance upon hearsay in determining probable cause to bind over a defendant for trial." Schiermeister v. Riskedahl, 449 N.W.2d 566, 569 (N.D.1989) (decided before Rule 5.1, N.D.R.Crim.P., was amended to specifically allow hearsay evidence).
Significantly, Rule 1101(d)(3), N.D.R.Ev., specifically declares that the North Dakota Rules of Evidence, except those relating to privileges, do not apply to "transfer and dispositional hearings in juvenile court." The explanatory note to Rule 1101, N.D.R.Ev., explains: "A juvenile court transfer hearing is equivalent to a preliminary examination in a criminal case which has relaxed standards for admission of evidence." We conclude that the juvenile court did not err in ruling that the North Dakota Rules of Evidence were inapplicable in this juvenile transfer proceeding, or in allowing Detective Warren, who was available for cross-examination and was cross-examined, to present hearsay testimony based upon information acquired in the course of his investigation.[3]
C.R.M. contends that the use of exclusively hearsay testimony at the transfer hearing deprived him of the essentials of due process and fair treatment, in violation of Kent v. United States, 383 U.S. 541, 86 S.Ct. 1045, 16 L.Ed.2d 84 (1966). A District of Columbia statute placed sixteen-year-old Kent in the "exclusive jurisdiction" of the juvenile court, but provided that a judge "may, after full investigation," transfer him to the court which would have jurisdiction if he were an adult. In transferring Kent to adult court, the judge conducted no hearing, made no findings, recited no reasons, and did not refer to any of Kent's motions. The United States Supreme Court held that the procedure used was insufficient:
"[W]e conclude that, as a condition to a valid waiver order, petitioner was entitled to a hearing, including access by his counsel to the social records and probation or similar reports which presumably are considered by the court, and to a statement of reasons for the Juvenile Court's decision. We believe that this result is required by the statute read in the context of constitutional principles relating to due process and the assistance of counsel."
383 U.S. at 557, 86 S.Ct. at 1055, 16 L.Ed.2d at 95. The court said that it did "not mean by this to indicate that the hearing to be held must conform with all of the requirements of a criminal trial or even of the usual administrative hearing." 383 U.S. at 562, 86 S.Ct. at 1057, 16 L.Ed.2d at 97-8. Kent does not preclude the use of hearsay testimony by an investigating detective.
C.R.M. argues:
"Taken to its extreme, the State would argue that so long as there is `probable cause' sufficient to have a judicial officer sign a Summons and Complaint in District Court or a Petition in juvenile court adequate *328 and sufficient evidence has been shown to transfer to adult court.....
"The state fails to recognize the distinction between juvenile court and adult court. If the same standard applied, there would be no need to hold a transfer hearing because the Court would have already made the determination at the detention hearing stage."
Probable cause must be found in the initiation of a complaint under Rule 3, N.D.R.Crim.P., or at a defendant's initial appearance before a magistrate under Rule 5, N.D.R.Crim.P. Although, under § 27-20-17(2), N.D.C.C., there must be a determination "whether there is probable cause to believe the child has committed the delinquent or unruly acts alleged," a probable cause finding upon a juvenile detention hearing under that section is designed to afford a child treatment or rehabilitation alleged to be needed in a petition filed under § 27-20-21, N.D.C.C. See In Interest of C.J.A., 473 N.W.2d 439 (N.D.1991). A probable cause finding in a transfer hearing has a very different purposeremoving the child from the juvenile court into the district court for trial as an adult. A transfer hearing is not only an additional opportunity for a juvenile to show, with the assistance of counsel, that probable cause does not exist, its purpose and its emphasis are significantly different from the detention hearing.
C.R.M. contends that the juvenile court erred in finding probable cause to believe that C.R.M. assisted in the commission of attempted robbery. Under § 27-20-56(1), N.D.C.C., this court hears an appeal under the Uniform Juvenile Court Act "upon the files, records, and minutes or transcript of the evidence of the juvenile court, giving appreciable weight to the findings of the juvenile court." "We reexamine the evidence in a manner similar to the former procedure of trial de novo." In Interest of M.D.N., 493 N.W.2d at 683-84. "Probable cause is a minimal burden of proof" which is met if "there is a definite probability based on substantial evidence." Id. at 684. "`[S]ubstantial evidence'" is "`such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Application of Bank of Rhame, 231 N.W.2d 801, 811 (N.D. 1975), quoting Consolo v. Federal Maritime Comm'n, 383 U.S. 607, 619-20, 86 S.Ct. 1018, 1026, 16 L.Ed.2d 131, 140 (1966).
The juvenile court's finding relied upon Detective Warren's testimony, which was based upon his investigation, including interviews of witnesses, other police officers, and one of the juveniles involved in the incident. Warren testified that the juveniles left J.A.G.'s residence and drove around Fargo and Moorhead; they had with them a sawed-off shotgun and shells; "the gang," of which C.R.M. was a member, owned the shotgun; B.G. and M.C. got out of the car C.R.M. was driving, taking the shotgun with them; B.G. told C.R.M. to drive ahead; J.G. thought B.G. was going to "steal the car or rob the people in the car"; on November 14, the evening before the shooting, B.G. committed an armed robbery with the shotgun in Moorhead and brought back a purse and watches; C.R.M. took one of the watches B.G. took in the robbery and was wearing it when he was arrested; after the shooting, B.G. and M.C. got back in the car; and all of the juveniles were later arrested in Moorhead. Detective Warren further testified:
"Two people getting out of a car, [B.G.] removes himself from the vehicle with [M.C.] at 10:30 at night, in a residential area, with a loadedor we suspect loaded 12-gauge shotgun, sawed off.
"You put those things together, and I believe that there was an armed robbery that was going to occur that evening."
The foregoing testimony was exclusive of statements by C.R.M.
A reasonable mind might accept Warren's testimony as adequate to support a conclusion that C.R.M. assisted in the commission of an attempted robbery. We conclude that the juvenile court did not err in finding probable cause to believe that C.R.M. assisted in committing an attempted robbery resulting in the death of Cheryl Tendeland.
C.R.M. asserts that one of the juveniles involved in Cheryl Tendeland's death was convicted of murder, but the district court granted a defense motion for judgment of acquittal on the charge of attempted robbery at the close of the State's case. C.R.M. *329 argues that the acquittal further illustrates the lack of evidence to support a transfer and "should be conclusive as to whether or not there is sufficient evidence to show by a `definite probability based on substantial evidence' that C.R.M. committed the alleged predicate act of Attempted Robbery." Not only was the judgment of acquittal subsequent to the transfer hearing and therefore not a part of the record we review, In Interest of M.D.N., supra, an attempted robbery charge required proof beyond a reasonable doubt, see, e.g., § 29-21-05, N.D.C.C., a very high burden of proof. A district court's mid-trial acquittal in a different case does not in any way undercut a juvenile court's finding of probable cause, a minimal burden of proof, to believe a child assisted in an attempted robbery.
The transfer order is affirmed.
SANDSTROM, NEUMANN and MARING, JJ., concur.
MESCHKE, Justice, concurring.
Miniaturization is more than a modern technological phenomenon. Parallel processes affect other fields. A comparable process may be the diminishment of deep-rooted legal doctrines to achieve judicial economy.
Since Rule 5.1(a) of the Federal Rules of Criminal Procedure was adopted in 1972 to allow a finding of probable cause at a preliminary examination to "be based upon hearsay evidence in whole or in part," there has been a developing attitude "to reduce, not increase, the number of preliminary motions" for "reasons largely of administrative necessity and the efficient administration of justice." FRCrimP 5.1, Notes of Federal Advisory Committee on Rules (1972). NDRCrimP 4(a), when adopted in 1973, allowed an arrest warrant to be issued on a finding of probable cause based upon "hearsay in whole or in part...." A similar sentence was added to NDRCrimP 5.1(a) in 1995 to allow a finding of probable cause at a preliminary hearing on only hearsay evidence.
Today's result, allowing virtually automatic transfer from juvenile court to criminal court on hearsay evidence alone, seems to be an extension of the same trend to remove traditional safeguards for judicial economy. That best explains this departure from past precedents.
This result essentially permits the detective or policeman, rather than the judge, to determine the existence of probable cause. While I would have thought this a highly debatable proposition considering the unreliability of most hearsay evidence, see NDREv 802 and 803, I recognize this trend toward judicial economy has gone too far to turn back the clock.
Therefore, I choose to emphasize the judicial duty that is heralded by the Notes of Advisory Committee on Rules with FRCrimP 5.1: "To [permit] a probable cause finding [to] be based upon hearsay does not preclude the magistrate from requiring a showing that admissible evidence will be available at the time of trial." As NDRCrimP 4(a) explicitly directs, the judge should take care that "there is a substantial basis for believing the source of the hearsay to be credible and for believing that there is a factual basis for the information furnished."
I concur in the result.
NOTES
[1] This case is a companion to Criminal No. 960008, In Interest of J.A.G., 552 N.W.2d 317 (N.D.1996).
[2] C.R.M. also relies on Eastburn v. J.K.H., 392 N.W.2d 406 (N.D.1986), which relied on P.W.N. for the proposition that reasonable grounds to believe a child committed a delinquent act must be established by witnesses available for cross-examination. In Eastburn, we noted that the testimony of social workers was hearsay, but we did not decide if that was permissible, because there was no objection in juvenile court.
[3] Our conclusion is in accord with the decisions of at least one of the other states to enact the Uniform Juvenile Court Act. See In re R.B., 264 Ga. 602, 448 S.E.2d 690 (1994); In the Interest of R.J., 191 Ga.App. 712, 382 S.E.2d 671 (1989).