**CITY OF BISMARCK, Plaintiff and Appellee,**

v.

**Thomas SCHOPPERT, Defendant and Appellant.**

**Cr. No. 900263.**

Supreme Court of North Dakota.

May 7, 1991.

Thomas M. Tuntland of Tuntland and Donovan, Mandan, for defendant and appellant.

Paul H. Fraase, Asst. City Atty., Bismarck, for plaintiff and appellee.

LEVINE, Justice.

Thomas Schoppert appeals from a judgment of conviction entered upon a jury verdict finding him guilty of disorderly conduct. We reverse.

Early on April 1, 1989, Schoppert approached a police car in which Officer Eileen Elhard and volunteer police chaplain George Walker were sitting. As he walked past the car from its front to its back, Schoppert gestured with his middle finger and said, "Fucking, bitching cop." Schoppert continued walking, never breaking stride. Elhard backed the car in order to follow Schoppert and attempted to talk to him through her car window. Three times

she asked Schoppert what was the matter and three times he replied, "Fuck you."

Elhard got out of the car and stopped Schoppert by grabbing his left arm. She asked him to identify himself. He replied, "Fuck you." He smelled of alcohol. Elhard was joined by her supervisor, Officer Dwight Offerman, and she described to Offerman what had occurred. Schoppert asked Offerman why he was being detained. Offerman said that making a vulgar gesture and saying "Fuck you" could be considered disorderly conduct. Schoppert responded, saying "Fuck my ass." He told the officers, "You don't know who you're fucking with. You just bought yourself a federal lawsuit." While he was talking to Offerman, Schoppert took one step toward the officer. After this exchange, Offerman asked Elhard to arrest Schoppert for disorderly conduct.

Schoppert was charged with violating Bismarck City Ordinance 6–05–01(3).[1] He demanded a jury trial and his case was transferred to county court. Schoppert moved for a dismissal of the complaint on the ground that subsection 3 of the ordinance, under which he was charged, invalidly conflicted with and, therefore, superseded state law. The trial court dismissed and the City appealed. *Bismarck v. Schoppert*, 450 N.W.2d 757 (N.D.1990). (*Schoppert I*) Based on *Bismarck v. Nassif*, 449 N.W.2d 789 (N.D.1989), we reversed. 450 N.W.2d at 758. In *Nassif*, the defendant argued that Bismarck Ordinance 6–05–01(3) conflicted with 12.1–01–05, NDCC, because the ordinance prohibited conduct different from the statute. We concluded there was no conflict between the ordinance and the statute because the additional language in the ordinance simply "clarifies the particular language which it prohibits. It literally expresses what the state statute must be construed to include to be constitutional." *Nassif*, 449 N.W.2d

---

1. Bismarck Ordinance 6–05–01(3):

   *Disorderly Conduct.* A person is guilty of an offense if, with intent to harass, annoy, or alarm another person or in reckless disregard of the fact that another person is harassed, annoyed, or alarmed by his behavior, that person:

   . . . .

   "3. In a public place, uses abusive or obscene language, or makes an obscene gesture, which language or gesture by its very utterance or gesture inflicts injury or tends to incite an immediate breach of the peace. . . ."

at 794. *Compare* Bismarck Ordinance 6–05–01(3) *with* NDCC § 12.1–31–01(3).[2]

On remand, Schoppert made a second motion to dismiss the complaint on the grounds that the ordinance was vague and overbroad and that it was unconstitutionally applied. The trial court denied the motion. Schoppert was convicted after a jury trial and now appeals.

On appeal, Schoppert advances several arguments, two of which, taken together, are dispositive. Schoppert first challenges the jury instructions defining disorderly conduct and then argues there was insufficient evidence to support the jury's verdict. The sum of his argument is that the ordinance, as applied to him, violates the first amendment.

Schoppert · challenges two jury instructions submitted by the City and given by the court.

### "PROOF OF OFFENSE

"In this case the following facts must be proved beyond a reasonable doubt to justify a verdict of guilty:

"1. That on the 1st day of April, 1989, in Bismarck, Burleigh County, North Dakota, the defendant knowingly in a public place used abusive or obscene language or made an obscene gesture, which language or gesture by its very utterance or gesture *inflicts injury* or tends to incite an immediate breach of the peace; and

"2. That the defendant did so with the intent to harass, annoy, or alarm another person or in reckless disregard of the fact that another person was harassed, annoyed or alarmed by his behavior." (Emphasis added.)

### "DISORDERLY CONDUCT

"A person who, with intent to harass, annoy, or alarm another person knowingly or in reckless disregard of the fact

that another person is harassed, annoyed or alarmed by his behavior, in a public place uses abusive or obscene language, or makes an obscene gesture, which language or gesture by its very utterance or gesture *inflicts injury* or tends to incite an immediate breach of the peace, is guilty of disorderly conduct." (Emphasis added.)

The inclusion of the underlined phrase "inflicts injury," Schoppert says, under the circumstances of this case, allowed the jury to convict him for conduct that is constitutionally protected. We agree.

The challenged phrase, "inflicts injury," which is found in subsection 3 of the Bismarck City Ordinance, *see supra* n. 1, is obviously derived from *Chaplinsky v. New Hampshire,* 315 U.S. 568, 62 S.Ct. 766, 86 L.Ed. 1031 (1942). However, that language has never been given independent substance or a life of its own and has never been held to be, by itself, a valid basis for a criminal conviction. Indeed, in *Bismarck v. Nassif,* 449 N.W.2d at 793, this court pointed out that subsection 3 of the ordinance was constitutional because it was limited to "fighting words" by the language "tends to incite an immediate breach of the peace." In *Chaplinsky,* the United States Supreme Court said that the "freedom of speech" protected by the first amendment to the Constitution does not prevent a state from punishing the speaking of "insulting or 'fighting' words—those which by their very utterance inflict injury or tend to incite an immediate breach of the peace." 315 U.S. at 572, 62 S.Ct. at 769. *Chaplinsky* did not, however, involve words that "inflict injury"; it involved words that "tend to incite an immediate breach of the peace." The Supreme Court noted that the New Hampshire Supreme Court had declared the state statute's purpose as preserving the public peace, "no words being 'forbidden except such as have a direct tendency to cause acts of violence by the person to whom, individually, the

---

**2.** NDCC 12.1–31–01(3):

"*Disorderly conduct.* A person is guilty of a class B misdemeanor if, with intent to harass, annoy, or alarm another person or in reckless disregard of the fact that another person is

harrassed, annoyed, or alarmed by his behavior, he:

. . . .

"3. In a public place, uses abusive or obscene language, or makes an obscene gesture. . . ."

remark is addressed.' " 315 U.S. at 573, 62 S.Ct. at 770, citing *State v. Brown*, 68 N.H. 200, 38 A. 731 (1895). Because its holding did not rest on the ground of inflicting injury, the Supreme Court did not attempt to define what words "inflicted injury by their very utterance." Instead, the Court held that a state may limit speech in order to prevent breaches of the peace but only that speech that is "likely to provoke the average person to retaliation, and thereby cause a breach of the peace." *Chaplinsky*, 315 U.S. at 574, 62 S.Ct. at 770.

Shortly after deciding *Chaplinsky*, the Supreme Court reversed a conviction for "breach of the peace" under a Chicago city ordinance. *Terminiello v. Chicago*, 337 U.S. 1, 69 S.Ct. 894, 93 L.Ed. 1131 (1949). The Illinois courts, having overlooked the construction placed on the ordinance by the trial court in its instructions, affirmed the conviction.

"The trial court charged that 'breach of the peace' consists of any 'misbehavior which violates the public peace and decorum'; and that the 'misbehavior may constitute a breach of the peace if it stirs the public to anger, invites dispute, brings about a condition of unrest, or creates a disturbance, or if it molests the inhabitants in the enjoyment of peace and quiet by arousing alarm.' " 337 U.S. at 3, 69 S.Ct. at 895.

The Court vetoed this construction because under it, the jury could convict if it found Terminiello's speech "stirred people to anger, invited public dispute, or brought about a condition of unrest." None of those conditions could support a conviction for disorderly conduct without violating the first amendment. 337 U.S. at 5, 69 S.Ct. at 896. To withstand constitutional challenge, the ordinance must be aimed at speech "shown likely to produce a clear and present danger of a serious substantive evil that rises far above public inconvenience,

annoyance, or unrest." *Id.* at 4, 69 S.Ct. at 896.

Sometime later, the Supreme Court found unconstitutional a Georgia statute which prohibited the use of "opprobrious words or abusive language, tending to cause a breach of the peace." *Gooding v. Wilson*, 405 U.S. 518, 519, 92 S.Ct. 1103, 1104, 31 L.Ed.2d 408 (1972). Reviewing Georgia decisions under the statute, the Supreme Court concluded that Georgia courts had not given the statute a construction limiting it to words that "have a direct tendency to cause acts of violence by the person to whom, individually, the remark is addressed." 405 U.S. at 524, 92 S.Ct. at 1107. In *Gooding*, the Court applied a modified version of the *Chaplinsky* fighting-words test. The Court concluded that the statute reached words that conveyed disgrace or that insulted the listener, and that these words were not words "which by their very utterance ... tend to incite an immediate breach of the peace." 405 U.S. at 525, 92 S.Ct. at 1107. The Supreme Court thus edited the phrase "inflict injury" from the *Chaplinsky* test much like this court did in *Nassif.*

Whatever the *Chaplinsky* Court meant by the phrase "words which by their very utterance inflict injury," *Terminiello* and *Gooding* stand for the proposition that the fact that words are vulgar or offensive is not sufficient to remove them from the protection of the first amendment and into the arena in which the state can make conduct criminal.[3] As the Supreme Court recently observed, it has "repeatedly invalidated laws that provide the police with unfettered discretion to arrest individuals for words or conduct that annoy or offend them." *Houston v. Hill*, 482 U.S. 451, 465, 107 S.Ct. 2502, 2511, 96 L.Ed.2d 398 (1987). It is thus not a crime in this country to be a boor, absent resort to fighting words. And, fighting words are "personally abusive epithets which, when addressed to the

---

**3.** Professor Laurence Tribe has noted that state courts have allowed individuals to bring actions for intentional infliction of emotional distress if injured by abusive racial slurs, *i.e.*, words that by their utterance inflict injury. L. Tribe, *American Constitutional Law* § 12–8 n. 17 (2d ed. 1988). He says, "The Supreme Court has not directly passed on the issue, and it is doubtful whether more severe measures such as criminal penalties are constitutionally permissible, unless the speech involved constitutes a clear and present danger of imminent violence." *Id.*

ordinary citizen, are, as a matter of common knowledge, inherently likely to provoke violent reaction." *Cohen v. California,* 403 U.S. 15, 20, 91 S.Ct. 1780, 1785–86, 29 L.Ed.2d 284 (1971).

Schoppert argues that in *Nassif,* we adopted a "police officers' exception" to the fighting words doctrine. In *Nassif,* we referred to Justice Powell's concurring opinion in *Lewis v. New Orleans,* 415 U.S. 130, 135, 94 S.Ct. 970, 973, 39 L.Ed.2d 214 (1974) (Powell, J., concurring), in which he suggested that the fighting words exception to free speech should be further narrowed when the speech is addressed to trained police officers. "[A] properly trained officer may reasonably be expected to 'exercise a higher degree of restraint' than the average citizen, and thus be less likely to respond belligerently to 'fighting words.'" 415 U.S. at 135, 94 S.Ct. at 973 (citation omitted). We also emphasized the proposition that:

> "[T]he First Amendment protects a significant amount of verbal criticism and challenge directed at police officers. 'Speech is often provocative and challenging.... [But it] is nevertheless protected against censorship or punishment, unless shown likely to produce a clear and present danger of a serious substantive evil that rises far above public inconvenience, annoyance, or unrest.' *Terminiello v. Chicago,* 337 U.S. 1, 4 [69 S.Ct. 894, 896, 93 L.Ed. 1131] (1949)." *Houston v. Hill,* 482 U.S. at 461, 107 S.Ct. at 2509, quoted in *Nassif,* 449 N.W.2d at 795.

In *Hill,* the Supreme Court also reflected on Justice Powell's observations about trained police officers' higher ability to remain cool under pressure.

Although sufficiently compelling both in language and logic to be highlighted by the United States Supreme Court and this court, Justice Powell's concurrence was not adopted as a rule in *Hill* or in *Nassif.* Justice Powell did, however, aptly synthesize "fighting words" doctrine when he noted that whether particular words are "fighting words" depends on the circumstances of their utterance and the fact that

the words are spoken to police is a significant circumstance. *Lewis v. New Orleans,* 415 U.S. at 135, 94 S.Ct. at 973 (Powell, J., concurring); *cf. Cohen v. California,* 403 U.S. at 20, 91 S.Ct. at 1785–86 [vulgar expression not directed at particular person could not be punished]; *Cox v. Louisiana,* 379 U.S. 536, 550, 85 S.Ct. 453, 462, 13 L.Ed.2d 471 (1965) [police presence negated threat to public peace].

■ Here, the instructions given by the trial court allowed the jury to convict if it found Schoppert used abusive language that either (1) tended to incite an immediate breach of the peace or (2) inflicted injury by its very utterance. Only the first option meets the constitutional requirements we have outlined. We cannot sustain a conviction based upon an unconstitutional ground. *Terminiello,* 337 U.S. at 5, 69 S.Ct. at 896; *Bachellar v. Maryland,* 397 U.S. 564, 570, 90 S.Ct. 1312, 1315–16, 25 L.Ed.2d 570 (1970); *Stromberg v. California,* 283 U.S. 359, 368, 51 S.Ct. 532, 535, 75 L.Ed. 1117 (1931). This record tells us that Schoppert could only have been convicted for injuring the feelings of the officers, or the chaplain, all or any of them, an unconstitutional ground for a criminal conviction. There is no evidence that Schoppert's language or conduct tended to incite an immediate breach of the peace. *Gooding v. Wilson, supra.*

■ The City must prove each element of a criminal offense beyond a reasonable doubt. *E.g., State v. Kurle,* 390 N.W.2d 48 (N.D.1986). Thus, on review, we look for competent and substantial evidence from which the jury could reasonably conclude that each essential element of the offense had been met. *Id.* at 49; *State v. Plentychief,* 464 N.W.2d 373 (N.D.1990); *State v. Miller,* 357 N.W.2d 225 (N.D.1984); *State v. McMorrow,* 286 N.W.2d 284 (N.D.1979).

> "[W]e do not weigh conflicting evidence, nor do we judge the credibility of witnesses; instead, we look only to the evidence most favorable to the verdict and the reasonable inferences therefrom to see if there is substantial evidence to warrant a conviction. [Citation omit-

ted.]" *State v. Johnson,* 425 N.W.2d 903, 906 (N.D.1988).

■ Officers Elhard and Offerman and Chaplain Walker testified to their reactions to Schoppert's speech. Walker said that he did not like to hear the words Schoppert used in any situation. Elhard testified that she was angered and alarmed by Schoppert's conduct. Offerman testified that Elhard was upset, agitated and at a high emotional level when he arrived on the scene. Offerman also said he was angered by Schoppert's speech.

The City's witnesses said, however, that Schoppert's vulgar speech would not incite them to violence. Both of the police officers agreed that Schoppert appeared to be angry and although they did not so precisely characterize his demeanor, obnoxious. Both further agreed that at least some of Schoppert's unseemly and vulgar epithets came in response to the officers' repeated requests for identification and were in effect robust denials to provide identification. The officers also agreed that Schoppert was under no compulsion to identify himself. *Terry v. Ohio,* 392 U.S. 1, 32–33, 88 S.Ct. 1868, 1885–86, 20 L.Ed.2d 889 (1968) (Harlan, J., concurring); *id.* at 34, 88 S.Ct. at 1886 (White, J., concurring). *See also Florida v. Royer,* 460 U.S. 491, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983). Most important, both officers unequivocally rejected any suggestion that any anger Schoppert may have provoked in them would or could have incited them to a breach of the peace, immediate or otherwise. Their primary concern was their uncertainty over Schoppert's next move. So too, the volunteer police chaplain explained that while his feelings were indeed injured by Schoppert's vulgarity and he did experience some anger, he was not inspired either to react violently or to breach the peace.

All of the City's witnesses—Chaplain Walker, Officers Elhard and Offerman—said that Schoppert's words would not incite them to a violent reaction. In fact, their testimony confirmed the notion expressed by Justice Powell in *Lewis v. New Orleans,* that those well-trained and experienced police officers were able to hear Schoppert's vulgar and abusive speech as part of their duties, divorce themselves from any anger the words might have engendered, and concentrate on whether there was any danger that Schoppert might act violently. Schoppert's words were not a clear invitation to fight and the testimony did not demonstrate that these words, spoken to this audience, had any tendency to cause an immediate breach of the peace. The City failed to offer any evidence on this essential element of the crime charged.

Without weighing the evidence and while viewing it in a light most favorable to the verdict, we hold it was insufficient to sustain the conviction of Schoppert. Under these circumstances, Schoppert cannot be retried. *Burks v. United States,* 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978). Accordingly, we reverse and remand to the trial court with instructions to vacate the judgment and enter judgment of acquittal.

Reversed.

MESCHKE, J., concurs.

ERICKSTAD, Chief Justice, concurring specially.

I very reluctantly concur in the result. When Mr. Schoppert was admitted to the practice of law in this state on the 19th day of July, 1972, he took the lawyer's pledge. The pledge that Mr. Schoppert took for admission to the Bar of this state, read as follows:

"On my honor, I do solemnly promise:

"I will maintain the respect due to Courts of Justice and Judicial officers;

"I will not counsel or maintain any suit or proceedings which shall appear to me to be unjust, nor any defense except such as I believe to be honestly debatable under the law of the land;

"I will employ for the purpose of maintaining the causes confided to me such means only as are consistent with truth and honor, and will never seek to mislead the judge or jury by any artifice or false statement of fact or law;

"I will maintain the confidence and preserve inviolate the secrets of my client, and will accept no compensation in

connection with his business except from him or with his knowledge and approval;

*"I will abstain from all offensive personality,* and advance no fact prejudicial to the honor or reputation of a party or witness, unless required by the justice of the cause with which I am charged;

"I will never reject, from any consideration personal to myself, the cause of the defenseless or oppressed, or delay any man's cause for lucre or malice. [Emphasis added.]"

I think Mr. Schoppert's conduct comes perilously close to violating subsection 1 and subsection 5 of section 27–13–01, N.D. C.C., which read as follows:

*"27–13–01. Duties of attorneys.*—Every attorney and counselor at law shall:

1. Maintain the respect due to the courts of justice and to judicial officers;

\* \* \* \* \* \*

5. Abstain from all offensive personalities and advance no fact prejudicial to the honor or reputation of a party or witness, unless required by the justice of the cause with which he is charged."

*See also* Rule 8.4(d) of the North Dakota Rules of Professional Conduct, West—North Dakota Court Rules, p. 774.

I hope Mr. Schoppert has a reasonable explanation for his conduct, but I have discerned none from the record in this case. A possible justification or explanation for Mr. Schoppert's conduct may be that his conduct does not have a direct bearing on his ability to serve the public as an attorney and counselor at law, or that freedom to conduct himself as he did is protected by the First Amendment of the United States Constitution. I am not convinced of the former. The law may support the latter.

Simply being uncouth, foul-mouthed, and vulgar is not something we should encourage on the part of members of the bar.

VANDE WALLE, Justice, concurring specially.

I concur in the result. I need cite no authority for the proposition that the First Amendment protects unsavory expression as well as approbatory expression. That protection extends to the expression in this case which seems to be as much, if not more so, sexist in its content and intent as it is contemptuous of police authority. It also extends to offensive deportment by those whom we expect to exhibit better judgment.

I did not participate in this Court's decision in *Bismarck v. Nassif,* 449 N.W.2d 789 (N.D.1989), and I write separately to express my understanding that neither in that decision nor in the majority opinion have we adopted a position which holds that police officers are to be singled out as the focus of protestors' contempt. Although the fact the person at whom epithets are directed is a police officer may be considered in determining whether or not the words are "fighting words" unprotected by the First Amendment, I do not concede it is the only factor or the controlling factor. Because of the authority we vest in police officers we may have the right to expect them to exercise restraint. But we do not pay them enough to expect they will quash, if they could, all the same human reactions that other people have.

Because the term "inflicts injury" was used without further explanation in the challenged jury instructions, I agree we must reverse the conviction. Ordinarily that would result in a remand for a new trial. The majority concludes, apparently as a matter of law, that given the evidence in the record the defendant's language and conduct would not constitute "fighting words" tending to incite an immediate breach of the peace. However, I have observed from experience that following an appeal, the evidence on retrial is not always identical to that of the first trial. Furthermore, the majority opinion tends to cast the witnesses as "Joe Cools," *i.e.,* impossible to incite to a breach of the peace. I am not confident that the jury must accept their characterizations of their feelings any more than they would have to accept their claims that they were incited to an immediate breach of the peace.

Notwithstanding my misgivings, I reluctantly concur in the order for acquittal.

My concurrence is influenced not by the admissions of the State's witnesses that they were not incited to a breach of the peace but by the undisputed evidence which reveals that the defendant's first remark was made while walking by the car and the subsequent remarks were made only after the officer followed the defendant in her police car. I concede the first remark alone, as offensive as it was, would, without more, not be sufficient to convict. Insofar as the further remarks were made *after* Officer Elhard followed Schoppert they could be characterized as provoked. There are times when absent any indications to the contrary, a single remark is best left to pass unchallenged. This was such a time.

GIERKE, J., concurs.