2005 ND 134

**STATE of North Dakota, Plaintiff
and Appellee**

v.

**Dale BARTH, Defendant
and Appellant.**

No. 20050015.

Supreme Court of North Dakota.

July 15, 2005.

Jeffrey L. Sheets of Farhart & Sheets, P.C., Minot, N.D., for defendant and appellant.

John J. Mahoney, State's Attorney, Center, N.D., for plaintiff and appellee.

MARING, Justice.

[¶ 1] Dale Barth appeals from criminal judgments entered on a jury verdict convicting him of disorderly conduct, preventing arrest or other discharge of duties, and attempted simple assault. We affirm.

I

[¶ 2] On July 20, 2004, David Bueligen cut hay on land he had orally agreed to rent from Fanny Kobs. On July 22, 2004, Dale Barth and his father, Otto Barth, who also rented certain tracts of land from Kobs, entered the land and began raking the hay cut by David Bueligen. When Kobs witnessed the Barths raking the hay, she approached Dale Barth and told him she was going to call David Bueligen. Dale Barth responded, requesting that Kobs also call the sheriff. Kobs proceeded to telephone the Bueligens and asked them to come to the land. David Bueligen and his father, Roger Bueligen, arrived at the land. David Bueligen and Dale Barth argued over who owned the hay. The Bueligens then left the area and proceeded to Kobs' house.

[¶ 3] Approximately ten minutes later, Sheriff David Hilliard arrived. After a heated exchange with Dale Barth, Sheriff Hilliard went to Kobs' house to discuss the situation with the Bueligens and Kobs. Sheriff Hilliard and the Bueligens then returned to the hayfield. At this point, David Bueligen attempted to remove his machinery from the land. However, Otto Barth blocked the approach with a tractor. Dale Barth demanded David Bueligen pay $250 before he would allow him to pass. Sheriff Hilliard asked the Barths "four, five" times to move their tractor so David Bueligen could remove his machinery. Barth refused. Sheriff Hilliard then ordered Dale Barth off Kobs' property. Dale Barth refused, began yelling obscenities, made obscene gestures, and allegedly attempted to hit Sheriff Hilliard. Sheriff Hilliard, with the assistance of Officer Schmitz, wrestled Dale Barth to the ground, handcuffed, and arrested him.

[¶ 4] On July 23, 2004, Dale Barth was charged with disorderly conduct under N.D.C.C. § 12.1–31–01, preventing arrest or discharge of other duties under N.D.C.C. § 12.1–08–02, and attempted simple assault under N.D.C.C. §§ 12.1–06–01 and 12.1–17–01. On January 6, 2005, a jury found Barth guilty of all charges.

[¶ 5] Barth appeals the criminal judgments.

II

[¶ 6] On appeal, Barth argues the arrest was an unlawful violation of his First Amendment right to free speech under the United States Constitution. Barth also argues there was insufficient evidence to support the convictions, and the State failed to meet its burden of proof with respect to each of the charges. The State argues Barth's threatening conduct and use of profane and threatening language is not constitutionally protected speech. Consequently, Barth's arrest and subsequent conviction were justified. The State further argues the consistent and corroborated testimony of several witnesses was sufficient to prove Barth committed the offenses.

[¶ 7] The State must prove each element of a criminal offense beyond a reasonable doubt. *State v. Kurle,* 390 N.W.2d 48, 49 (N.D.1986). On appeal, we look for competent and substantial evidence from which the jury could reasonably conclude that each essential element of the offense had been proven. *City of Bismarck v. Schoppert,* 469 N.W.2d 808,

812 (N.D.1991). This Court does not weigh conflicting evidence, or judge the credibility of witnesses; instead, we look only to the evidence most favorable to the verdict and the reasonable inferences to determine if substantial evidence exists to support a conviction. *Id.*

[¶ 8] We use particular caution when reviewing claims of constitutionally protected activity. *City of Fargo v. Brennan*, 543 N.W.2d 240, 243 (N.D.1996). "When Free Speech arguments are made, the reviewing court must independently scrutinize the record to see if the charged conduct is protected." *Id.* (citing *Houston v. Hill*, 482 U.S. 451, 458 n. 6, 107 S.Ct. 2502, 96 L.Ed.2d 398 (1987)). A reviewing court has a constitutional duty to independently examine the entire record to ensure the judgment does not constitute a forbidden intrusion on free expression. *Id.*

## III

[¶ 9] Barth argues the arrest was unlawful because his expression during the July 22, 2004, incident was protected by the right to free speech under the First Amendment to the United States Constitution. We disagree.

[¶ 10] Barth was charged with disorderly conduct in violation of N.D.C.C. § 12.1-31-01, which provides:

1. An individual is guilty of a class B misdemeanor if, with intent to harass, annoy, or alarm another person or in reckless disregard of the fact that another person is harassed, annoyed, or alarmed by the individual's behavior, the individual:

    a. Engages in fighting, or in violent, tumultuous, or threatening behavior;

    b. Makes unreasonable noise;

    . . . .

2. This section does not apply to constitutionally protected activity. If an individual claims to have been engaged in a constitutionally protected activity, the court shall determine the validity of the claim as a matter of law and, if found valid, shall exclude evidence of the activity.

Subsection 2, N.D.C.C. § 12.1-31-01, specifically directs a court to decide the validity of claims of constitutionally protected activity and, if the claims are valid, to exclude the evidence. While not explicitly stated in N.D.C.C. § 12.1-31-01(2), a motion in limine would be an appropriate method to advance a "constitutionally protected activity" argument in order to keep inadmissible evidence from the hearing of the jury. In this case, a motion in limine was not made requesting the trial court examine certain offered evidence to determine whether any or all of Barth's conduct was constitutionally protected activity. Barth, instead, made a Rule 29, N.D.R.Crim.P., motion for judgment of acquittal arguing the evidence was insufficient to sustain a conviction of disorderly conduct. While not an improper motion, a more effective motion to raise the issue of constitutionally protected activity would be a motion in limine to exclude the evidence.

[¶ 11] In making his free speech argument, Barth contends he was arrested for "verbally, and by way of a gesture, opposing or challenging a police action." He further asserts "no threat of violence to the officer or any attempt to strike the officer" or "profanity or gestures directed toward anyone" other than Sheriff Hilliard occurred. Barth asserts his situation is analogous to and supported by this Court's decision in *City of Bismarck v. Schoppert*, 469 N.W.2d 808 (N.D.1991).

[¶ 12] In *Schoppert*, the defendant was convicted of disorderly conduct under a city ordinance for making an obscene ges-

ture and directing obscenities toward two police officers. Schoppert appealed, arguing a jury instruction allowing the jury to convict him if it found the "obscene language . . . by its very utterance or gesture inflicts injury . . . is guilty of disorderly conduct" allowed the jury to convict him for constitutionally protected conduct. *Id.* at 810. We agreed and reversed, holding "injuring the feelings of the officers" with obscene language and gestures, without other threatening behavior, is an unconstitutional ground for a criminal conviction. *Id.* at 812.

[¶ 13] The instant case is distinguishable from *Schoppert*. In *Schoppert*, the profanity and vulgar expressions were directed at police officers without a breach of peace or otherwise threatening behavior. *Id.* at 809. Here, witnesses testified that Barth's behavior went far beyond the conduct exhibited in *Schoppert*. David Bueligen testified that just before the arrest, Barth gave Sheriff Hilliard "the finger" five or six inches from his face, "put up his fist and said, 'C'mon you son of a bitch.'" Next, according to David Bueligen, Sheriff Hilliard asked Barth to calm down or he would arrest him. Sheriff Hilliard then grabbed Barth's "arm and threw him to the ground while [Barth] swung at him once or two times for sure, scruffed him alongside the face." Roger Bueligen testified Barth "gave [Sheriff Hilliard] the finger . . . and threatened to swing at him. And sheriff asked him a couple times if he didn't cool down he would have to put him under arrest. And he said FU and try it or whatever." Roger Bueligen further testified that, when Sheriff Hilliard tried to arrest Dale Barth, "he stepped back a step or so and then he put his arm back like, come on, come at me, like he was going to swing at him." Sheriff Hilliard testified that Barth was very angry, using profanity, and, after twice being told to calm down and threat-

ened with arrest, Barth responded by walking up to him, putting his middle finger up approximately six inches from his face, and saying, "Fuck you. You can join my church." Next, according to Sheriff Hilliard, he twice told Barth, "Dale, you need to calm down. If you keep this up, I'm going to arrest you for disorderly conduct." Barth then "stuck his middle finger up in my face again" and repeated the "church" comment. Sheriff Hilliard testified he then told Barth, "Dale, I'm going to place you under arrest." Barth then put up both his fists and said "C'mon," and "swung, and he grazed the side of [the sheriff's] face." Sheriff Hilliard then wrestled Barth to the ground and Barth "was swearing at [the sheriff] the whole time, using profanity" and "he was trying to kick [the sheriff]." Sheriff Hilliard testified he arrested Barth for "the actions that [Barth] did to [him], by the profanity he was using, by putting his finger in [the sheriff's] face, and the profanity being used towards David and Roger [Bueligen] and pointing his finger at them." Sheriff Hilliard further testified he "felt in danger of [Barth] from being that close to [the sheriff's] face." Officer Schmitz testified that, after Sheriff Hilliard told Barth he was going to arrest him for disorderly conduct, Barth "took a swing at [the sheriff] and he swung a couple more times."

[¶ 14] Barth testified admitting he gave Sheriff Hilliard "the finger" and made the "church" comment, but he disputed attempting to hit Sheriff Hilliard. Barth testified that when he turned his back on Sheriff Hilliard to turn his tractor off, Sheriff Hilliard grabbed him from behind, threw him to the ground, and handcuffed him. Otto Barth corroborated this testimony.

[¶ 15] We do not weigh conflicting evidence, nor do we judge the credibility of witnesses. *State v. Klindtworth*, 2005 ND

18, ¶ 10, 691 N.W.2d 284. When considering the sufficiency of the evidence, we look only to the evidence most favorable to the verdict and the reasonable inferences to determine if substantial evidence exists to support a conviction. *Id.* (citing *State v. Klose*, 2003 ND 39, ¶ 19, 657 N.W.2d 276).

[¶ 16] Despite Barth's claim of constitutionally protected speech, we believe Barth's persistent use of profane and threatening language combined with threatening hand gestures, including giving Sheriff Hilliard "the finger" five or six inches from his face, raising his fist and saying, "C'mon you son of a bitch," were reasonably found to be threatening and alarming. *See Svedberg v. Stamness*, 525 N.W.2d 678, 684 (N.D.1994) (holding "taunts, threats including a threat to kill," and other harassing conduct were "unprotected by the First Amendment"); *City of Mandan v. Hoesel*, 497 N.W.2d 434, 436 (N.D.Ct.App.1993) (holding that "[s]triking out or attempting to hit someone is not protected expression, but rather is physical conduct that can be the basis of a disorderly conduct conviction"); *City of Bismarck v. Nassif*, 449 N.W.2d 789, 791–94 (N.D.1989) (affirming sufficiency of the evidence for disorderly conduct when a defendant was "upset, shouting, loud, and aggressive" and threatening "to get [his] shotgun and 'blow you bastards away' "); *City of Beach v. Kryzsko*, 434 N.W.2d 580 (N.D.Ct.App.1989) (holding an accused who "screamed, hollered, [and] swore" at a citizen, and who swore and swung at police officer was guilty of disorderly conduct).

[¶ 17] We conclude Barth's threatening words and gestures are not constitutionally protected free speech under the First Amendment of the United States Constitution.

## IV

[¶ 18] Barth argues there was not sufficient evidence to support his convictions.

At the close of the State's case, Barth moved for judgment of acquittal under N.D.R.Crim.P. 29, preserving the issue of sufficiency of the evidence. *See State v. Igou*, 2005 ND 16, ¶ 4, 691 N.W.2d 213. The trial court denied the motion.

[¶ 19] In reviewing challenges to the sufficiency of the evidence, "this Court merely reviews the record to determine if there is competent evidence that allowed the jury to draw an inference reasonably tending to prove guilt and fairly warranting a conviction." *Id.* at ¶ 5. The defendant has the burden to show the evidence, when viewed in the light most favorable to the verdict, permits no reasonable inference of guilt. *Id.* "A conviction rests upon insufficient evidence only when no rational factfinder could have found the defendant guilty beyond a reasonable doubt after viewing the evidence in a light most favorable to the prosecution and giving the prosecution the benefit of all inferences reasonable to be drawn in its favor." *Id.* (citing *State v. Knowels*, 2003 ND 180, ¶ 6, 671 N.W.2d 816).

### A. Disorderly Conduct

[¶ 20] The jury found Barth guilty of disorderly conduct, a class B misdemeanor, in violation of N.D.C.C. § 12.1–31–01(1)(a) and (b), which provide:

1. An individual is guilty of a class B misdemeanor if, with intent to harass, annoy, or alarm another person or in reckless disregard of the fact that another person is harassed, annoyed, or alarmed by the individual's behavior, the individual:

   a. Engages in fighting, or in violent, tumultuous, or threatening behavior;

   b. Makes unreasonable noise;

   . . . .

[¶ 21] Barth argues there was not sufficient evidence to convict him of disorderly conduct because he did not threaten or attempt to strike the sheriff or use profanity or gestures directed at anyone other than the sheriff. In viewing the evidence most favorable to the verdict, we conclude it is sufficient to support Barth's conviction of disorderly conduct.

[¶ 22] The evidence shows, on July 22, 2004, Barth was involved in a dispute with David Bueligen over the right to cut hay on land owned by Fanny Kobs. Barth refused to allow Bueligen to remove his machinery from Kobs' land unless Bueligen paid $250. Sheriff David Hilliard was called to the scene and asked Barth to allow the Bueligens to remove their machinery. Barth refused. Sheriff Hilliard then asked Barth to leave the property, and Barth refused. Barth became angry, began yelling obscenities and made obscene and threatening gestures toward Sheriff Hilliard. David Bueligen testified that Barth gave Sheriff Hilliard "the finger" five or six inches from his face, "put up his fist and said, 'C'mon you son of a bitch.'" Roger Bueligen testified Barth "gave [Sheriff Hilliard] the finger ... and threatened to swing at [the sheriff]. And sheriff asked him a couple times if he didn't cool down he would have to put him under arrest. And he said FU and try it or whatever." Sheriff Hilliard testified Barth was very angry, using profanity, and, after twice being told to calm down and threatened with arrest, Barth responded by walking up to him, putting his middle finger up approximately six inches from his face, and saying, "Fuck you. You can join my church." Next, according to Sheriff Hilliard, he twice told Barth, "Dale, you need to calm down. If you keep this up, I'm going to arrest you for disorderly conduct." Barth then "stuck his middle finger up in [the sheriff's] face again" and repeated the "church" comment. Sheriff Hilliard testified he then told Barth, "Dale, I'm going to place you under arrest." Barth then put up both his fists and said "C'mon," and "swung and he grazed the side of [the sheriff's] face." Sheriff Hilliard then wrestled Barth to the ground and Barth "was swearing at [the sheriff] the whole time, using profanity" and "he was trying to kick [the sheriff]." Sheriff Hilliard testified he arrested Barth for "the actions that [Barth] did to [the sheriff], by the profanity he was using, by putting his finger in [the sheriff's] face, and the profanity being used towards David and Roger [Bueligen] and pointing his finger at them." Sheriff Hilliard further testified he "felt in danger of [Barth] from being that close to [the sheriff's] face." Officer Schmitz testified that, after Sheriff Hilliard told Barth he was going to arrest him for disorderly conduct, Barth "took a swing at [the sheriff] and swung a couple more times."

[¶ 23] Viewing the evidence in the light most favorable to the verdict, we conclude the jury could reasonably have found beyond a reasonable doubt that Barth engaged in threatening behavior and committed disorderly conduct in violation of N.D.C.C. § 12.1–31–01.

### B. Preventing Arrest or Discharge of Other Duties

[¶ 24] The jury found Barth guilty of preventing arrest or discharge of other duties, in violation of N.D.C.C. § 12.1–08–02, which provides:

1. A person is guilty of a class A misdemeanor if, with intent to prevent a public servant from effecting an arrest of himself or another for a misdemeanor or infraction, or from discharging any other official duty, he creates a substantial risk of bodily injury to the public servant or to anyone except himself, or employs

means justifying or requiring substantial force to overcome resistance to effecting the arrest or the discharge of the duty. A person is guilty of a class C felony if, with intent to prevent a public servant from effecting an arrest of himself or another for a class A, B, or C felony, he creates a substantial risk of bodily injury to the public servant or to anyone except himself, or employs means justifying or requiring substantial force to overcome resistance to effecting such an arrest.

2. It is a defense to a prosecution under this section that the public servant was not acting lawfully, but it is no defense that the defendant mistakenly believed that the public servant was not acting lawfully. A public servant executing a warrant or other process in good faith and under color of law shall be deemed to be acting lawfully.

[¶ 25] Barth argues there was not sufficient evidence to convict him of preventing arrest or other discharge of duties because the State failed to submit evidence showing Sheriff Hilliard was acting lawfully when he arrested Barth for disorderly conduct. Barth contends that because Sheriff Hilliard did not have a warrant for his arrest or a court order ordering him off the land, no legal basis existed for the disorderly conduct arrest. Therefore, Barth asserts the conviction for preventing arrest or discharge of other duties should be overturned under N.D.C.C. § 12.1–08–02(2).

■■■■ [¶ 26] Unlawful police conduct is a statutory defense in a prosecution for preventing arrest or discharge of other duties but it is not a defense if the defendant mistakenly believed the public servant was acting unlawfully. *State v. Mathre*, 2004 ND 149, ¶ 9, 683 N.W.2d 918;

N.D.C.C. § 12.1–08–02(2). Unlawful police conduct is not an absolute defense to a preventing arrest charge, and a defendant is allowed to resist only excessive force used to effect an arrest. *Id.; see also* N.D.C.C. § 12.1–05–03(1).

■■■■ [¶ 27] Here, Sheriff Hilliard was acting lawfully when he placed Barth under arrest for disorderly conduct. Section 29–06–15, N.D.C.C., provides:

1. A law enforcement officer, without a warrant, may arrest a person:

   a. For a public offense, committed or attempted in the officer's presence; and for the purpose of this subdivision, a crime must be deemed committed or attempted in the officer's presence when what the officer observes through the officer's senses reasonably indicates to the officer that a crime was in fact committed or attempted in the officer's presence by the person arrested.

The term "public offense" includes disorderly conduct. *Mathre*, 2004 ND 149, ¶ 12, 683 N.W.2d 918. Therefore, because Barth committed disorderly conduct in Sheriff Hilliard's presence, Sheriff Hilliard was acting lawfully when he arrested him.

[¶ 28] A person is guilty of preventing arrest or discharge of other duties "if, with intent to prevent a public servant from effecting an arrest of himself or another for a misdemeanor ... he creates a substantial risk of bodily injury to the public servant or to anyone except himself, or employs means justifying or requiring substantial force to overcome resistance to effecting the arrest or the discharge of the duty." N.D.C.C. § 12.1–08–02(1). Sufficient evidence shows Barth created "a substantial risk of bodily injury" to Sheriff Hilliard and "substantial force" was required to overcome Barth's "resistance to

effecting the arrest." *See* N.D.C.C. § 12.1–08–02(1). David Bueligen testified Barth "swung at [Sheriff Hilliard] once or two times for sure." Sheriff Hilliard testified that, when he told Barth he was placing him under arrest, Barth put up both fists and "swung and [Barth] grazed the side of [the sheriff's] face." After wrestling Barth to the ground "he was trying to kick [the sheriff]." Officer Schmitz testified Barth "took a swing at [Sheriff Hilliard] and swung a couple more times" when the sheriff attempted to arrest him.

[¶ 29] Viewing the evidence in the light most favorable to the verdict, we conclude the jury could reasonably have found beyond a reasonable doubt that Barth committed preventing arrest or discharge of other duties in violation of N.D.C.C. § 12.1–08–02.

### C. Attempted Simple Assault

[¶ 30] The jury found Barth guilty of attempted simple assault, in violation of N.D.C.C. §§ 12.1–06–01 and 12.1–17–01. Section 12.1–06–01, N.D.C.C., provides:

1. A person is guilty of criminal attempt if, acting with the kind of culpability otherwise required for commission of a crime, he intentionally engages in conduct which, in fact, constitutes a substantial step toward commission of the crime. A "substantial step" is any conduct which is strongly corroborative of the firmness of the actor's intent to complete the commission of the crime. Factual or legal impossibility of committing the crime is not a defense, if the crime could have been committed had the attendant circumstances been as the actor believed them to be.

Section 12.1–17–01, N.D.C.C., provides, in relevant part:

1. A person is guilty of an offense if that person:
   a. Willfully causes bodily injury to another human being; or
   . . . .
2. The offense is:
   a. A class C felony when the victim is a peace officer or correctional institution employee acting in an official capacity, which the actor knows to be a fact, a person engaged in a judicial proceeding, or a member of a municipal or volunteer fire department or emergency medical services personnel unit or emergency department worker in the performance of the member's duties.

[¶ 31] Barth argues there was not sufficient evidence to convict him of attempted simple assault because the State failed to prove Barth had any intent to cause physical harm to Sheriff Hilliard, and because he was entitled to use reasonable force to defend himself when Sheriff Hilliard initiated the contact.

[¶ 32] Criminal attempt requires an actor to intentionally engage in conduct constituting a substantial step toward commission of the crime. N.D.C.C. § 12.1–06–01. A "substantial step" is "any conduct which is strongly corroborative of the firmness of the actor's intent to complete the commission of the crime." N.D.C.C. § 12.1–06–01. The essential elements of simple assault on a peace officer include willfully causing bodily injury. N.D.C.C. § 12.1–17–01. An individual acts "willfully" if the individual engages in conduct "intentionally, knowingly, or recklessly." N.D.C.C. § 12.1–02–02(1)(e). An individual engages in conduct "intentionally" if it is the individual's purpose to engage in the conduct, N.D.C.C. § 12.1–02–02(1)(a); "knowingly" if "he knows or has a firm belief, unaccompanied by substantial doubt, that he is

doing so, whether or not it is his purpose to do so," N.D.C.C. § 12.1–02–02(1)(b); "recklessly" if "he engages in the conduct in conscious and clearly unjustifiable disregard of a substantial likelihood of the existence of the relevant facts or risks, such disregard involving a gross deviation from acceptable standards of conduct," N.D.C.C. § 12.1–02–02(1)(c). Section 12.1–01–04(4), N.D.C.C., further provides "bodily injury" is the "impairment of physical condition, including physical pain."

[¶ 33] To prove Barth committed attempted simple assault on a peace officer, the State must demonstrate Barth willfully engaged in activity constituting a substantial step toward causing physical pain to one or more of the officers present. Sheriff Hilliard testified Barth "swung, and he grazed the side of my face," leaving a "mark on my face" and "also a mark on my knee where he had kicked me." Barth's conduct evidences he intentionally attempted to hit Sheriff Hilliard and did hit and kick Sheriff Hilliard, leaving visible marks on his body. Viewing the evidence in a light most favorable to the verdict, we conclude sufficient evidence exists to support the jury's verdict convicting Barth of attempted simple assault.

## IV

[¶ 34] We conclude Barth's conviction for disorderly conduct was not a violation of his First Amendment rights. We affirm the disorderly conduct, preventing arrest or discharge of other duties, and attempted simple assault criminal judgments.

[¶ 35] GERALD W. VANDE WALLE, C.J., LAWRENCE A. LECLERC, S.J., and CAROL RONNING KAPSNER, JJ., concur.

[¶ 36] The Honorable LAWRENCE A. LECLERC, S.J., sitting in place of SANDSTROM, J., disqualified.