778 N.W.2d 764 (2010)
2010 ND 27
In the Interest of H.K., a Child.
Bradley Cruff, Barnes County States Attorney, Petitioner and Appellee
v.
H.K., child, D.K., mother, and W.K., father, Respondents and Appellants.
No. 20090149.
Supreme Court of North Dakota.
February 17, 2010.
*766 Lee M. Grossman (argued), Assistant State's Attorney, Valley City, ND, for petitioner and appellee.
Russell J. Myhre (argued), Valley City, ND, for respondents and appellants.
KAPSNER, Justice.
[¶ 1] H.K. appeals from a juvenile court order finding she is a delinquent child for committing disorderly conduct. H.K. argues the juvenile court erred by denying her motion to dismiss, admitting evidence beyond the scope of the facts alleged in the petition, and finding she committed disorderly conduct. We hold the juvenile court did not err by denying H.K.'s motion to dismiss because the petition sufficiently alleged facts to defend the charge of disorderly conduct and the First Amendment did not prohibit the juvenile court from considering her statements as evidence. Further, we determine the juvenile court's admission of evidence beyond the scope of the petition did not affect H.K.'s substantial rights and the juvenile court was not clearly erroneous to find H.K. committed disorderly conduct. We affirm the juvenile court's order.

I.
[¶ 2] On March 26, 2009, the Barnes County state's attorney filed a petition alleging H.K. committed the delinquent act of disorderly conduct in violation of N.D.C.C. § 12.1-31-01. H.K. moved to dismiss the petition, arguing the First Amendment prohibited the juvenile court from considering her statements as evidence of criminal conduct, and the petition therefore failed to allege she committed acts sufficient to meet the statutory definition of "disorderly conduct." The juvenile court declined to rule on the motion prior to the hearing on the petition.
[¶ 3] At the hearing on April 27, 2009, T.L., a teenage girl of African-American ancestry, testified H.K. and two other girls followed her into a bathroom during a dance at a teen center in Valley City. T.L. *767 stated H.K. and the girls "started yelling at me and calling me a nigger and telling me I don't own this town, that they own this town, and they don't want niggers in their town and that I need to watch out and they just kind of ran off giggling." After this incident, T.L. left the dance and went to a local restaurant to talk to a friend who was working there at the time. Shortly after T.L. arrived, H.K. and the two other girls also entered the restaurant and joined a group of teenagers who were there before T.L. T.L. testified she overheard the group saying "nigger" and making other disparaging comments about her while she was talking to her friend. When H.K. and her companions left the restaurant, T.L. testified H.K. said "[b]ye nigger" to T.L. as she walked by. T.L.'s friend also testified regarding the conduct of H.K. and the group of teenagers at the restaurant. She said the group "were calling [T.L.] names like she's worthless, she dropped out, she's a nigger, she doesn't belong in this town, she should just move out, why is she in this town, and stuff like that." Lastly, T.L. testified H.K. made an obscene gesture while driving by her several weeks after the February incidents. H.K.'s counsel objected to the testimony regarding the obscene gesture, arguing it was beyond the scope of the petition.
[¶ 4] At the close of the hearing, H.K.'s counsel argued the State was attempting to criminalize the use of the word "nigger" in violation of H.K.'s rights under the First Amendment. The juvenile court found H.K. was a delinquent child for committing disorderly conduct. H.K. now appeals, arguing the juvenile court should have granted her motion to dismiss because the State's petition failed to allege she committed acts sufficient to meet the definition of "disorderly conduct" in N.D.C.C. § 12.1-31-01 and the First Amendment prohibited the use of her statements as evidence of criminal conduct. H.K. also argues this Court should overturn the juvenile court's decision because the juvenile court admitted evidence beyond the scope of the petition and because the juvenile court was clearly erroneous to find she committed disorderly conduct.

II.
[¶ 5] H.K. argues the juvenile court should have granted her motion to dismiss because the petition failed to allege she committed acts meeting the statutory definition of "disorderly conduct" and the First Amendment prohibited the use of her statements as evidence of criminal conduct. On appeal from a juvenile court decision, we hear the case "upon the files, records, and minutes or transcript of the evidence of the juvenile court, giving appreciable weight to the findings of the juvenile court." N.D.C.C. § 27-20-56.

A.
[¶ 6] H.K. argues the juvenile court erred by refusing to grant her motion to dismiss because the petition failed to allege she committed acts meeting the statutory definition of "disorderly conduct." Section 12.1-31-01(1), N.D.C.C., provides the statutory basis for the crime of disorderly conduct. It states:
An individual is guilty of a class B misdemeanor if, with intent to harass, annoy, or alarm another person or in reckless disregard of the fact that another person is harassed, annoyed, or alarmed by the individual's behavior, the individual:
a. Engages in fighting, or in violent, tumultuous, or threatening behavior;
. . . .
e. Persistently follows a person in or about a public place or places;
. . . .

*768 g. Creates a hazardous, physically offensive, or seriously alarming condition by any act that serves no legitimate purpose; or
h. Engages in harassing conduct by means of intrusive or unwanted acts, words, or gestures that are intended to adversely affect the safety, security, or privacy of another person.
N.D.C.C. § 12.1-31-01(1).
[¶ 7] The State's petition alleged H.K. committed disorderly conduct but failed to specify the particular subsection of N.D.C.C. § 12.1-31-01(1) she was alleged to have violated. The petition provided:
[O]n or about the 27th day of February, 2009 [H.K.] with the intent to harass, annoy or alarm another person or in reckless disregard of the fact that another person is harassed, annoyed or alarmed by the individual's behavior, engaged in fighting, or in violent, tumultuous, or threatening behavior, made unreasonable noise, in a public place, used abusive or obscene language, knowingly exposed that individual's penis, vulva, or anus or made an obscene gesture, obstructed vehicular or pedestrian traffic or the use of a public facility, persistently followed a person in a public place, or engaged in harassing conduct by means of intrusive or unwanted acts, word[s], or gestures intended to adversely affect the safety, security, or privacy of another person, more specifically when she called T.L. a nigger at the teen center in Valley City, Barnes County, North Dakota, this being DISORDERLY CONDUCT, a delinquent act according to § 27-20-02(6) and a Class B misdemeanor pursuant to the provisions of § 12.1-31-01 of the North Dakota Century Code, as amended[.]
Thus, the petition basically repeated the entire disorderly conduct statute before specifically alleging H.K. committed disorderly conduct by calling T.L. a nigger at the teen center on February 27, 2009.
[¶ 8] A petition "is similar to an information or a complaint in a criminal proceeding because it sets forth the charges against [the juvenile]." In re Z.C.B., 2003 ND 151, ¶ 23, 669 N.W.2d 478. A petition must "set forth plainly ... [t]he facts which bring the child within the jurisdiction of the court...." N.D.C.C. § 27-20-21. A juvenile court has original jurisdiction over "[p]roceedings in which a child is alleged to be delinquent, unruly, or deprived." N.D.C.C. § 27-20-03(1)(a). A delinquent child is one who has committed "an act designated a crime under the law" and is in need of treatment or rehabilitation. N.D.C.C. § 27-20-02(6)-(7).
[¶ 9] The petition must provide the facts which bring the child within the jurisdiction of the juvenile court because "such facts are necessary ... to provide notice to respondents so they may prepare for the hearing and participate meaningfully in it." Interest of J.K.S., 274 N.W.2d 244, 248 n. 1 (N.D.1979) (citing Interest of T.M.M., 267 N.W.2d 807, 813 (N.D.1978)). In a juvenile court proceeding, due process of law requires "notice which would be deemed constitutionally adequate in a civil or criminal proceeding." Interest of P.W.N., 301 N.W.2d 636, 646 (N.D.1981) (quoting In re Gault, 387 U.S. 1, 33, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967)). "A fundamental element of adequate notice is that allegations must be stated with particularity, giving notice of specific grounds and factual claims." Simmons v. New Pub. Sch. Dist. No. Eight, 1998 ND 6, ¶ 5, 574 N.W.2d 561 (citations omitted). Therefore, a petition cannot merely recite a statute and conclusively allege a juvenile has committed a crime. See J.K.S., 274 N.W.2d at 248 n. 1 (dealing with a petition alleging a juvenile is "deprived").
*769 [¶ 10] We conclude the petition sufficiently set forth the facts which brought H.K. within the jurisdiction of the juvenile court. The petition did not simply recite N.D.C.C. § 12.1-31-01 and conclusively allege H.K. committed disorderly conduct. Rather, the petition notified H.K. the State was charging her with disorderly conduct for the incident at the teen center in Valley City on February 27, 2009 during which she called T.L. a nigger. As explained below, the First Amendment did not prohibit the juvenile court from considering H.K.'s statements, as well as the context in which she made the statements, as evidence of criminal conduct. Therefore, the petition provided sufficient notice of the general grounds and factual claims upon which the State based its charge and H.K. had a meaningful opportunity to prepare for and participate in the hearing. We hold the juvenile court did not err by refusing to grant H.K.'s motion to dismiss on sufficiency of the petition grounds.

B.
[¶ 11] The State's petition alleged H.K. committed disorderly conduct "specifically when she called T.L. a nigger at the teen center in Valley City...." H.K. argues the juvenile court erred by denying her motion to dismiss because the First Amendment prohibited the juvenile court from considering her statements as evidence of criminal conduct, and, as a result, no competent evidence could establish she committed disorderly conduct in the manner alleged by the State.
[¶ 12] The disorderly conduct statute specifically states it does not apply to "constitutionally protected activity." N.D.C.C. § 12.1-31-01(2). When a person accused of disorderly conduct "claims to have been engaged in a constitutionally protected activity, the court shall determine the validity of the claim as a matter of law and, if found valid, shall exclude evidence of the activity." Id. "Whether an activity is constitutionally protected is a question of law, which is fully reviewable on appeal." State v. Holbach, 2009 ND 37, ¶ 11, 763 N.W.2d 761. "[A] reviewing court has a constitutional duty to independently examine the record as a whole to assure that the `judgment does not constitute a forbidden intrusion on the field of free expression.'" City of Fargo v. Brennan, 543 N.W.2d 240, 243 (N.D.1996) (quoting Hurley v. Irish-American Gay, Lesbian and Bisexual Group of Boston, 515 U.S. 557, 568, 115 S.Ct. 2338, 132 L.Ed.2d 487 (1995) (citation omitted)).
[¶ 13] The First Amendment to the U.S. Constitution provides: "Congress shall make no law ... abridging the freedom of speech...." The First Amendment's protection of freedom of speech applies to states through the due process clause of the Fourteenth Amendment to the U.S. Constitution. Stromberg v. California, 283 U.S. 359, 368, 51 S.Ct. 532, 75 L.Ed. 1117 (1931) (citing Gitlow v. New York, 268 U.S. 652, 666, 45 S.Ct. 625, 69 L.Ed. 1138 (1925)). "The First Amendment generally prohibits the government from proscribing speech based on disapproval of its content." Svedberg v. Stamness, 525 N.W.2d 678, 682 (N.D.1994). However, the constitutional right to freedom of speech does not protect "fighting words" that "tend to incite an immediate breach of the peace." City of Bismarck v. Schoppert, 469 N.W.2d 808, 810 (N.D.1991) (quoting Chaplinsky v. New Hampshire, 315 U.S. 568, 572, 62 S.Ct. 766, 86 L.Ed. 1031 (1942)). "Fighting words" are "personally abusive epithets which, when addressed to the ordinary citizen, are, as a matter of common knowledge, inherently likely to provoke violent reaction." Schoppert, at 811-12 (quoting Cohen v. California, 403 U.S. 15, 20, 91 S.Ct. 1780, 29 *770 L.Ed.2d 284 (1971)). "This definition recognizes that to determine whether a particular expression constitutes fighting words is dependent upon the context in which it was used." Svedberg, at 683 (citing Chaplinsky, at 573, 62 S.Ct. 766); see also Schoppert, at 812 ("[W]hether particular words are `fighting words' depends on the circumstances of their utterance...."). "Because of the elusive nature of fighting words, and because the meaning and usage of words is continually evolving, the only workable definition must necessarily be contextual." Svedberg, at 683.
[¶ 14] The First Amendment protects an individual's mere use of the term "nigger." See Schoppert, 469 N.W.2d at 811 ("[T]he fact that words are vulgar or offensive is not sufficient to remove them from the protection of the first amendment and into the arena in which the state can make conduct criminal."). However, H.K. did more than simply utter an offensive racial epithet. The evidence established H.K. followed T.L. into the bathroom at the teen center, yelled at her, repeatedly called her a "nigger," and told her to "watch out" because she "own[s] this town" and does not want "niggers" in it. Upon consideration of the context in which she made these statements, an objectively reasonable person would find H.K. used the term "nigger" in a derogatory manner that heightened the potential her statements would incite a breach of the peace or violent reaction, particularly when addressed to an individual of African-American ancestry. See In re John M., 201 Ariz. 424, 36 P.3d 772, 776-77 (Ariz.Ct.App.2001) (holding "fuck you, you god damn nigger" were "fighting words" because the statement "was likely to provoke a violent reaction when addressed to an ordinary citizen of African-American descent"); In re Spivey, 345 N.C. 404, 480 S.E.2d 693, 699 (1997) ("No fact is more generally known than that a white man who calls a black man a `nigger' within his hearing will hurt and anger the black man and often provoke him to confront the white man and retaliate."). Further, an objectively reasonable person would find the totality of H.K.'s statements constituted explicit and implicit threats that were likely to incite a breach of the peace or violent reaction and alarm the listener. Based upon the derogatory and threatening nature of H.K.'s statements, as well as the identity of the person to whom the statements were made, we conclude H.K.'s statements constituted "fighting words" in the context in which they were uttered and the protections of the First Amendment did not apply. Therefore, the juvenile court was free to consider the statements as evidence in determining whether H.K. committed disorderly conduct, and the juvenile court did not err by refusing to grant H.K.'s motion to dismiss on First Amendment grounds.

III.
[¶ 15] H.K. argues the juvenile court erroneously admitted evidence beyond the scope of the petition in determining whether she committed disorderly conduct, thereby denying her the right to effectively participate in the hearing. The petition alleged H.K. committed disorderly conduct when she called T.L. a nigger at the teen center on February 27, 2009. However, the juvenile court also admitted testimony about H.K.'s behavior at the restaurant after she left the teen center, as well as another incident several weeks later where H.K. drove by T.L. and made an obscene gesture.
[¶ 16] H.K. failed to object to the juvenile court's admission of the testimony *771 concerning her behavior at the restaurant. "[W]e will not entertain an objection which is raised for the first time on appeal from a juvenile court proceeding unless the objection concerns obvious error that affects a substantial right of the juvenile." Eastburn v. J.K.H., 392 N.W.2d 406, 408 (N.D.1986) (citing Huff v. K.P., 302 N.W.2d 779, 784 (N.D.1981)). "We must consider the entire record and the probable effect of the evidence alleged to be error in light of all the evidence in order to determine whether substantial rights were affected." Interest of P.A., 1997 ND 146, ¶ 13, 566 N.W.2d 422. Upon review, this Court does not believe the juvenile court's admission of testimony regarding H.K.'s behavior at the restaurant affected her substantial rights. Based entirely on the evidence regarding H.K.'s conduct at the teen center, the juvenile court could have found her guilty of disorderly conduct under N.D.C.C. § 12.1-31-01 for engaging in threatening behavior and harassing conduct by means of intrusive or unwanted words that were intended to adversely affect T.L.'s safety and security. Thus, the juvenile court's admission of the testimony did not induce an improper finding because the evidence concerning H.K.'s behavior at the restaurant was not necessary to establish she committed the crime. We therefore decline to find obvious error.
[¶ 17] H.K. did object to the juvenile court's admission of testimony regarding the obscene gesture. We find this evidence was incompetent to establish whether H.K. committed disorderly conduct in the manner alleged by the State's petition, and the juvenile court should have sustained H.K.'s objection. However, "the introduction of allegedly inadmissible evidence in a non-jury case is rarely reversible error...." In re J.S.L., 2009 ND 43, ¶ 25, 763 N.W.2d 783. We would only reverse a juvenile court's order based upon the admission of incompetent evidence if "all the competent evidence is insufficient to support" the order or "unless it affirmatively appears that the incompetent evidence induced the court to make an essential finding which would not otherwise have been made." Id. (citations omitted). See also In re B.B., 2007 ND 115, ¶ 11, 735 N.W.2d 855 ("Although the juvenile court erred in admitting the hearsay statements in the report, we conclude the error was harmless because ... we conclude there was enough other admissible evidence without the hearsay statements to support the finding of deprivation and the hearsay statements did not induce an improper finding.").
[¶ 18] The hearing before the juvenile court focused almost entirely upon the events of February 29, 2009, with only a brief discussion of the obscene gesture H.K. allegedly made several weeks later. The juvenile court could have found H.K. guilty of disorderly conduct based entirely on the evidence concerning her conduct at the teen center. Therefore, we conclude the competent evidence was sufficient to support the juvenile court's order and the incompetent evidence did not induce the court to find H.K. was a delinquent child. We decline to overturn the order based upon the juvenile court's admission of evidence regarding the obscene gesture.

IV.
[¶ 19] H.K. argues the juvenile court was clearly erroneous to find she committed acts sufficient to meet the statutory definition of disorderly conduct under N.D.C.C. § 12.1-31-01(1). On appeal from a juvenile court order, we review the *772 court's factual findings under the clearly erroneous standard. In re J.K., 2009 ND 46, ¶ 13, 763 N.W.2d 507 (citing N.D.R.Civ.P. 52(a)). "A finding of fact is clearly erroneous if there is no evidence to support it, if the reviewing court is left with a definite and firm conviction that a mistake has been made, or if the finding is induced by an erroneous view of the law." J.K., at ¶ 14 (quoting Interest of R.P., 2008 ND 39, ¶ 7, 745 N.W.2d 642).
[¶ 20] Section 12.1-31-01(1), N.D.C.C., states:
An individual is guilty of a class B misdemeanor if, with intent to harass, annoy, or alarm another person or in reckless disregard of the fact that another person is harassed, annoyed, or alarmed by the individual's behavior, the individual:
a. Engages in fighting, or in violent, tumultuous, or threatening behavior;
. . . .
e. Persistently follows a person in or about a public place or places;
. . . .
g. Creates a hazardous, physically offensive, or seriously alarming condition by any act that serves no legitimate purpose; or
h. Engages in harassing conduct by means of intrusive or unwanted acts, words, or gestures that are intended to adversely affect the safety, security, or privacy of another person.
At the hearing, T.L. testified H.K. and two other girls followed her into a bathroom at the dance and "started yelling at me and calling me a nigger and telling me I don't own this town, that they own this town, and they don't want niggers in their town and that I need to watch out...." T.L.'s friend, who worked at the restaurant T.L. and H.K. separately visited after the dance, testified H.K. and her friends "were calling [T.L.] names like she's worthless, she dropped out, she's a nigger, she doesn't belong in this town, she should just move out, why is she in this town, and stuff like that." The juvenile court also considered a police statement signed by T.L., which provided in part: "I then went into the bathroom and a group of girls who I've been having problems w/them calling me nigger came into the bathroom and [H.K.] starting yelling at me calling me stupid and saying I don't own this town she does and she doesn't like niggers here."
[¶ 21] Based upon this evidence, we cannot say the juvenile court was clearly erroneous to find H.K. committed disorderly conduct under N.D.C.C. § 12.1-31-01(1) by engaging in threatening behavior and harassing conduct intended to adversely affect the safety, security, or privacy of T.L.

V.
[¶ 22] We hold the juvenile court did not err by denying H.K.'s motion to dismiss because the petition sufficiently alleged facts to defend the charge of disorderly conduct and the First Amendment did not prohibit the juvenile court from considering her statements as evidence. Further, we determine the juvenile court's admission of evidence beyond the scope of the petition did not affect H.K.'s substantial rights and the juvenile court was not clearly erroneous to find H.K. committed disorderly conduct. We affirm the juvenile court's order.
[¶ 23] GERALD W. VANDE WALLE, C.J., MARY MUEHLEN MARING, DANIEL J. CROTHERS, and DALE V. SANDSTROM, JJ., concur.