Tufte, Justice.
 

 [¶ 1] Mary Redway and Alexander Simon appeal from criminal judgments entered after the district court found Redway guilty of disorderly conduct and Simon guilty of disorderly conduct and physical obstruction of a government function. They argue their participation in protests against the Dakota Access Pipeline was constitutionally protected activity that should have been excluded from evidence and there was insufficient evidence to support their convictions. We affirm.
 

 I
 

 [¶ 2] Redway and Simon participated with a group of about 150 other individuals in a protest against the Dakota Access Pipeline on October 22, 2016. The protest initially started near access point 128 by State Highway 1806 in southern Morton County. According to Bryan Niewind, a captain with the North Dakota Highway Patrol, he was one of four forward field commanders running day-to-day operations from August 11, 2016, through February 2017 as part of law enforcement's response to protests against the pipeline. Niewind testified that he initially responded to a "Code Red" on October 22, 2016, identifying protest activity at access point 126 along the pipeline route. Niewind testified that while responding to that incident, he received a report of a large gathering of individuals near access point 128 along the
 
 *629
 
 pipeline route and he responded to that report.
 

 [¶ 3] According to Niewind, access point 128 was the location where the pipeline would cross under State Highway 1806. He testified that he was aware of prior damage to construction equipment by some protesters and that he had concerns for the safety of the construction site and equipment and for the safety of the people in the area, including construction workers, private security officers, law enforcement officers, and protesters. According to Niewind, a group of about 150 protesters entered private land near access point 128 along a path cleared for the pipeline easement and walked in a northwesterly direction toward construction equipment. He testified there were about 40 to 60 law enforcement officers at the scene and the officers initially established a skirmish line about a mile and a half from State Highway 1806. Niewind described a skirmish line as a straight line formation with officers standing shoulder-to-shoulder about five feet apart to stop people from advancing past the officers. Niewind testified the protesters tried to flank the officers to the south and the officers regrouped and established a second skirmish line to stop the protesters. According to Niewind, officers made multiple announcements over megaphones and loudspeakers, informing the protesters that they were trespassing and were subject to arrest unless they returned to State Highway 1806. Niewind testified that some protesters did not comply with the announcements and continued advancing in an attempt to flank the officers in a northwesterly direction. Niewind testified the officers established a third skirmish line and more than one hundred protesters were arrested:
 

 We were able to stop the progress of that large group, and we stopped them. Again, we started to make announcements that everybody was criminally trespassing, and at that point in time it was determined that we were going to start making arrests.
 

 ....
 

 The reason we started making arrests was we had given them an opportunity to leave, they had failed to heed that warning. They had been given warnings that they were criminally trespassing but if they left, they could-we were going to allow them to do that, and that was when we set up the second skirmish line.
 

 They failed to heed that warning, continued to march further away from an area where we had asked them to go back to, and we felt that we needed to start making arrests otherwise we would just be following them around on this property all day.
 

 [¶ 4] According to another field commander, Bismarck Police Lieutenant Jason Stugelmeyer, one protester grabbed Stugelmeyer's pepper spray at the third skirmish line, which resulted in Stugelmeyer being sprayed in the face. Stugelmeyer also testified the skirmish lines were established because of concerns about the nature of the protesters' prior behavior, including assaults and damages to construction equipment. Both Redway and Simon were identified in pictures of the group of protesters at the third skirmish line, and a picture showed Simon with his arms linked with other protesters as arrests were being made at the third skirmish line.
 

 [¶ 5] The State initially charged several protesters, including Redway and Simon, with criminal trespass and engaging in a riot. The State subsequently dismissed those charges under N.D.R.Crim.P. 48 and filed new complaints against several protesters, including Redway and Simon, charging them with physical obstruction of
 
 *630
 
 a government function under N.D.C.C. § 12.1-08-01, disobedience of a safety order during a riot under N.D.C.C. § 12.1-25-04, and disorderly conduct under N.D.C.C. § 12.1-31-01.
 

 [¶ 6] The prosecutions against Redway and Simon were joined for trial with prosecutions against three other defendants, Tyrale Spotted Bear, Sara Lefleur-Vetter, and Edward Bad Hand. All five defendants waived their right to a jury trial. At a joint bench trial, the State relied on law enforcement officers' testimony about the conduct by the group of protesters and on photographs establishing the presence of Redway and Simon at the third skirmish line and a photograph of Simon with arms linked with other protesters while arrests were being effectuated. The State also introduced into evidence a video recording of some of the protest. The district court found Redway guilty of disorderly conduct and Simon guilty of disorderly conduct and physical obstruction of a government function and found the other three defendants not guilty of any of the charges against them.
 

 II
 

 A
 

 [¶ 7] Redway and Simon argue there was insufficient evidence to support their disorderly conduct convictions under N.D.C.C. § 12.1-31-01, which, as relevant to the charges in this case, describes the elements of that crime:
 

 1. An individual is guilty of a class B misdemeanor if, with intent to harass, annoy, or alarm another person or in reckless disregard of the fact that another person is harassed, annoyed, or alarmed by the individual's behavior, the individual:
 

 a. Engages in fighting, or in violent, tumultuous, or threatening behavior;
 

 ....
 

 d. Obstructs vehicular or pedestrian traffic or the use of a public facility;
 

 ....
 

 g. Creates a hazardous, physically offensive, or seriously alarming condition by any act that serves no legitimate purpose;
 

 h. Engages in harassing conduct by means of intrusive or unwanted acts, words, or gestures that are intended to adversely affect the safety, security, or privacy of another person; or
 

 ....
 

 Redway and Simon assert their individualized guilt cannot be established by their association with the group of protesters and by the photographic evidence of their presence during certain stages of the protests. They claim they did not engage in activity that created a hazardous, physically offensive, or seriously alarming condition and their political protest served a legitimate purpose under N.D.C.C. § 12.1-31-01(1)(g). They also contend there was insufficient evidence that they intended to harass, annoy, or alarm anyone and their convictions are inconsistent with their co-defendants' acquittals.
 

 [¶ 8] Our review of challenges to the sufficiency of the evidence is limited, and we view the evidence and reasonable inferences from the evidence in the light most favorable to the verdict to ascertain whether there is substantial evidence to warrant the conviction.
 
 State v. Wanner
 
 ,
 
 2010 ND 121
 
 , ¶ 9,
 
 784 N.W.2d 143
 
 . Under that standard, the defendant bears the burden to show the evidence supports no reasonable inference of guilt when viewed in a light most favorable to the verdict.
 

 Id.
 

 *631
 
 We do not reweigh conflicting evidence or judge the credibility of witnesses.
 

 Id.
 

 A verdict based on circumstantial evidence carries the same presumption of correctness as other verdicts.
 
 State v. Klindtworth
 
 ,
 
 2005 ND 18
 
 , ¶ 8,
 
 691 N.W.2d 284
 
 .
 

 [¶ 9] The disorderly conduct charge against Redway and Simon alleged that, with intent to harass, annoy, or alarm another person or in reckless disregard of the fact that another person is harassed, annoyed or alarmed by their behavior: (1) they engaged in fighting or violent, tumultuous, or threatening behavior; (2) they obstructed vehicular or pedestrian traffic or the use of a public facility; (3) they created a hazardous, physically offensive, or seriously alarming condition by any act that served no legitimate purpose; or (4) they engaged in harassing conduct by means of intrusive or unwanted acts, words or gestures that were intended to adversely affect the safety, security, or privacy of another person.
 
 See
 
 N.D.C.C. § 12.1-31-01(1)(a), (d), (g) and (h).
 

 [¶ 10] In a criminal case tried without a jury, a district court need only make a general finding of guilty or not guilty under N.D.R.Crim.P. 23(d).
 
 State v. Steiger
 
 ,
 
 2002 ND 79
 
 , ¶ 8,
 
 644 N.W.2d 187
 
 ;
 
 City of Fargo v. Brennan
 
 ,
 
 543 N.W.2d 240
 
 , 242-43 n.1 (N.D. 1996). Accordingly, we are not limited to the reasons a district court gives for a guilty finding; instead, we may consider the entire record to decide whether substantial evidence exists to support the conviction.
 
 Steiger,
 
 at ¶ 8.
 

 [¶ 11] In denying motions for acquittal under N.D.R.Crim.P. 29 at the close of the State's case, the district court said that for the purposes of that motion, there was enough evidence to proceed further under the elements for disorderly conduct stated in N.D.C.C. § 12.1-31-01(1)(a), (d), (g), and (h). Moreover, during Redway's sentencing, the court explained:
 

 THE COURT: She wasn't simply present. She was not simply present. She went all of the way through all three of the lines that were drawn. She, at least recklessly, although I think it was actually intentionally, but certainly recklessly, was acting recklessly on this. I think she is certainly guilty of disorderly conduct.
 

 You know, it's not for her sitting down. That might have been-that was a confusion thing. I think she probably was thinking that was the right thing to do, and it may very well have been the right thing to do. But the-she certainly meets the criteria for disorderly conduct. It was beyond a doubt in my mind. I mean, that was one of the easier ones to come up with.
 

 She certainly engaged in harassing conduct, at least recklessly, but probably intentionally by intruding or unwanted acts. She certainly knew that the police did not want her where she was. Nevertheless, she continued to press onward. She attempted to flank them. And that certainly was intended to adversely affect their safety, security and privacy.
 

 So-and it was her intent, at least at a minimum, she recklessly disregarded the facts that other people would be harassed, annoyed and alarmed by her behavior. And I think that was actually her intent, personally, but that may or may not be.
 

 [¶ 12] Although the defendants' argument focuses on N.D.C.C. § 12.1-31-01(1)(g), the district court's statements indicate the State presented sufficient evidence of disorderly conduct under N.D.C.C. § 12.1-31-01(1)(a), (d), (g), or (h) to deny a motion for judgment of acquittal after the State rested its case. Under the court's statements and general guilty verdict, our review is not limited to the conduct
 
 *632
 
 proscribed in N.D.C.C. § 12.1-31-01(1)(g).
 

 [¶ 13] There was evidence presented at trial that Redway and Simon were part of a group engaged in attempts to flank law enforcement's skirmish lines on private property after being told to return to State Highway 1806. Photographs introduced into evidence at trial showed both Redway and Simon at the third skirmish line while the defendants who were found not guilty by the district court were not identified at trial in photographs near that skirmish line. Moreover, there was evidence that one of the defendants, Lefleur-Vetter, was a journalist documenting the protests, and the court dismissed all charges against her. There was testimony from law enforcement officers about the circumstances leading up to the skirmish lines and the officers' goals to protect themselves, the construction equipment, construction workers, private security officers, and protesters. In that context, Redway and Simon acted as part of the group of protesters that attempted to flank the officers' skirmish lines and advance toward construction equipment. Redway and Simon were on private property, and although they were not charged with trespass in this proceeding, they were told by law enforcement to return to State Highway 1806. In the face of those requests, there is evidence that some in the group, including Redway and Simon, continued to engage in attempts to flank law enforcement's third skirmish line. Their conduct supports an inference of a reckless disregard of the fact that their behavior harassed, annoyed or alarmed other individuals and that their harassing conduct was intended to adversely affect the safety, security, or privacy of the other individuals.
 
 See
 
 N.D.C.C. § 12.1-31-01(1)(h).
 

 [¶ 14] Evidence in the record supports the district court's factual determination that Redway and Simon were more than simply present during the protests and were actively engaged in conduct constituting disorderly conduct under N.D.C.C. § 12.1-31-01. Under our standard of review, we do not reweigh the evidence about their conduct. We conclude there is sufficient evidence, viewed in the light most favorable to the verdict, to support their disorderly conduct convictions.
 

 B
 

 [¶ 15] Redway and Simon nevertheless claim they were peaceful protesters marching in a field and caused no injuries to others or damage to property, and they argue their activity was constitutionally protected and should have been excluded from evidence under N.D.C.C. § 12.1-31-01(2).
 

 [¶ 16] Section 12.1-31-01(2), N.D.C.C., specifically states the disorderly conduct statute does not apply to "constitutionally protected activity," and "[i]f an individual claims to have been engaged in a constitutionally protected activity, the court shall determine the validity of the claim as a matter of law and, if found valid, shall exclude evidence of the activity."
 
 See
 

 In re A.R.
 
 ,
 
 2010 ND 84
 
 , ¶ 8,
 
 781 N.W.2d 644
 
 ;
 
 In re H.K.
 
 ,
 
 2010 ND 27
 
 , ¶ 12,
 
 778 N.W.2d 764
 
 ;
 
 State v. Bornhoeft
 
 ,
 
 2009 ND 138
 
 , ¶ 7,
 
 770 N.W.2d 270
 
 . Whether an activity is constitutionally protected is a question of law, which is fully reviewable on appeal.
 
 H.K.
 
 , at ¶ 12 ;
 
 Bornhoeft
 
 , at ¶ 7. A reviewing court has a constitutional duty to independently examine the record as a whole to assure a judgment does not constitute a forbidden intrusion on the field of free expression.
 
 Brennan
 
 ,
 
 543 N.W.2d at 243
 
 .
 

 [¶ 17] The First Amendment to the United States Constitution provides: "Congress shall make no law ... abridging the freedom of speech...." The First
 
 *633
 
 Amendment's protection of freedom of speech applies to states through the due process clause of the Fourteenth Amendment to the United States Constitution.
 
 A.R.
 
 ,
 
 2010 ND 84
 
 , ¶ 9,
 
 781 N.W.2d 644
 
 . Moreover, the North Dakota Constitution similarly provides, "Every man may freely write, speak, and publish his opinions on all subjects, being responsible for the abuse of that privilege." N.D. Const. art. I, § 4. Those provisions generally prohibit the government from proscribing speech based on disapproval of its content.
 
 Svedberg v. Stamness
 
 ,
 
 525 N.W.2d 678
 
 , 682 (N.D. 1994).
 

 [¶ 18] In
 
 A.R.
 
 ,
 
 2010 ND 84
 
 , ¶ 9,
 
 781 N.W.2d 644
 
 , we recognized that some types of speech and expressive conduct are not encompassed within the freedom of speech. We explained that insulting or offensive words may lack free speech protection if the words are fighting words that tend to incite an immediate breach of the peace.
 
 Id.
 
 at ¶ 10. An analysis of fighting words depends on the context in which the words are used.
 
 Id.
 
 (citing
 
 City of Bismarck v. Schoppert
 
 ,
 
 469 N.W.2d 808
 
 , 811-13 (N.D. 1991) (holding vulgar and offensive words directed toward police officer are protected speech and not fighting words) ). In
 
 A.R.
 
 , at ¶ 11, we cited
 
 Bornhoeft
 
 ,
 
 2009 ND 138
 
 , ¶ 11,
 
 770 N.W.2d 270
 
 , for the critical distinction between potentially disturbing or threatening conduct proscribed by the disorderly conduct statute and the content of protected speech. We said that "[a] violation of the disorderly conduct statute does not necessarily depend on the particular content of the speech involved, but on the behavior."
 
 A.R.
 
 , at ¶ 11 (quoting
 
 Bornhoeft
 
 , at ¶ 11 ). In
 
 A.R.
 
 , at ¶ 11, we discussed several of our prior cases recognizing that the content of a defendant's speech may be protected constitutional activity, but that a defendant's contemporaneous conduct can be the basis for a disorderly conduct conviction.
 
 See
 

 H.K.
 
 ,
 
 2010 ND 27
 
 , ¶ 14,
 
 778 N.W.2d 764
 
 ;
 
 Bornhoeft
 
 , at ¶ 12 ;
 
 State v. Barth
 
 ,
 
 2005 ND 134
 
 , ¶¶ 16-17,
 
 702 N.W.2d 1
 
 ;
 
 Brennan
 
 ,
 
 543 N.W.2d at
 
 244 ;
 
 City of Bismarck v. Nassif
 
 ,
 
 449 N.W.2d 789
 
 , 795 (N.D. 1989). Depending on the context of the activity, our cases distinguish between constitutionally protected speech and conduct that may not be constitutionally protected.
 

 [¶ 19] Redway and Simon do not argue N.D.C.C. § 12.1-31-01 is unconstitutional on its face, or as applied to them. Through a motion in limine, the defendants sought exclusion of virtually all protest activity, "such as [his or her] carrying a sign, speaking [his or her] cause, being present at what protest site, or refusing to leave (sit-in)." At oral argument, the defendants argued that all evidence of their protest activity was subject to exclusion as constitutionally protected conduct. The evidence of defendants' conduct included attempts to flank law enforcement officers' skirmish lines on private property after being asked to return to State Highway 1806.
 
 See
 

 Lloyd Corp. v. Tanner
 
 ,
 
 407 U.S. 551
 
 , 568,
 
 92 S.Ct. 2219
 
 ,
 
 33 L.Ed.2d 131
 
 (1972) (stating United States Supreme Court has never held that a trespasser or uninvited guest may exercise general rights of free speech on privately owned property). Multiple attempts to flank law enforcement and move toward construction equipment on private property after being directed to leave is not protected speech merely because it occurs at a protest or is accompanied by carried signs or speaking for a cause. In the context of that evidence, we conclude the conduct underlying the conviction was not constitutionally protected activity, and the district court, sitting as the trier of fact, did not err in considering evidence about their conduct under N.D.C.C. § 12.1-31-01(2).
 

 *634
 
 III
 

 [¶ 20] Simon argues the evidence was insufficient to support his conviction for physical obstruction of a government function under N.D.C.C. § 12.1-08-01.
 

 [¶ 21] Section 12.1-08-01, N.D.C.C., describes the crime of physical obstruction of a government function:
 

 1. A person is guilty of a class A misdemeanor if he intentionally obstructs, impairs, impedes, hinders, prevents, or perverts the administration of law or other governmental function.
 

 2. This section does not apply to the conduct of a person obstructing arrest of himself, but such conduct is subject to section 12.1-08-02. This section does apply to the conduct of a person obstructing arrest of another. Inapplicability under this subsection is a defense.
 

 3. It is a defense to a prosecution under this section that the administration of law or other government function was not lawful, but it is no defense that the defendant mistakenly believed that the administration of law or other government function was not lawful. For the purposes of this subsection, the conduct of a public servant acting in good faith and under color of law in the execution of a warrant or other process for arrest or search and seizure shall be deemed lawful.
 

 [¶ 22] Although N.D.C.C. § 12.1-08-01 does not apply to the conduct of persons obstructing the arrest of themselves, it does apply to the conduct of a person obstructing arrest of another. We have said that some overt act is required to constitute the offense of physical obstruction of a government function, but direct force or physical violence is not required.
 
 State v. Purdy
 
 ,
 
 491 N.W.2d 402
 
 , 410-11 (N.D. 1992).
 

 [¶ 23] At trial, the State introduced into evidence a photograph of Simon and other protesters with arms linked when law enforcement officers were arresting individuals grouped together at the third skirmish line. There were no similar photographs of any of the other defendants in this case engaged in that activity. Simon's conduct may not have risen to the level of the use of bicycle locks used to hinder multiple arrests in
 
 Purdy
 
 ,
 
 491 N.W.2d at 411
 
 , but it nevertheless supports an inference of intentionally obstructing, impeding, or hindering the administration of law enforcement or other government function under N.D.C.C. § 12.1-08-01(1). We do not reweigh that evidence or judge the credibility of the witnesses' testimony about those actions. We conclude that the evidence, viewed in the light most favorable to the verdict, supports Simon's conviction for physical obstruction of a government function.
 

 IV
 

 [¶ 24] We affirm the judgments.
 

 [¶ 25] Jerod E. Tufte
 

 Daniel J. Crothers
 

 Lisa Fair McEvers
 

 Jon J. Jensen
 

 Gerald W. VandeWalle, C.J.