# IN THE SUPREME COURT
# STATE OF NORTH DAKOTA

## 2021 ND 145

City of Fargo,                                                    Plaintiff and Appellee

v.

Dennis Lee Roehrich,                                        Defendant and Appellant

## No. 20210023

Appeal from the District Court of Cass County, East Central Judicial District, the Honorable Steven L. Marquart, Judge.

AFFIRMED.

Opinion of the Court by VandeWalle, Justice.

William B. Wischer, Assistant City Attorney, Fargo, ND, for plaintiff and appellee; submitted on brief.

Stormy R. Vickers, Fargo, ND, for defendant and appellant; submitted on brief.

# City of Fargo v. Roehrich
## No. 20210023

**VandeWalle, Justice.**

[¶1]   Dennis Roehrich appealed from a jury verdict finding him guilty of harassment and an order deferring imposition of sentence. He argues his conviction should be reversed because Fargo's harassment ordinance, Fargo Municipal Code § 10-0322, is unconstitutionally vague and his speech is protected by the First Amendment. We affirm, concluding the harassment ordinance is not unconstitutionally vague and Roehrich's conduct is not protected.

## I

[¶2]   In May 2019, the City of Fargo charged Roehrich with harassment in violation of Fargo Municipal Code § 10-0322. The City alleged Roehrich made numerous vulgar and harassing telephone calls and left similarly offensive voicemail messages for several members of the Fargo Police Department over a two-year period and continued contacting members of the police department after receiving a cease and desist letter.

[¶3]   The case was transferred to district court for a jury trial. At the close of the City's case, Roehrich orally moved that the harassment ordinance is unconstitutionally vague and that his speech is protected by the First Amendment. The district court denied Roehrich's motions. The jury found Roehrich guilty of harassment.

## II

[¶4]   Roehrich argues the harassment ordinance is unconstitutionally vague.

[¶5]   Whether a law is unconstitutional is a question of law, which is fully reviewable on appeal. *State v. Vetter*, 2019 ND 262, ¶ 7, 934 N.W.2d 543. A party challenging the constitutionality of a statute or municipal ordinance has the burden to prove its constitutional infirmity. *City of Fargo v. Salsman*, 2009 ND 15, ¶ 23, 760 N.W.2d 123. We construe statutes and municipal ordinances to avoid constitutional infirmities, and we resolve any doubt in favor of the

1

constitutionality of the statute or ordinance. *Id.* at ¶ 21. *See also City of Belfield v. Kilkenny*, 2007 ND 44, ¶ 8, 729 N.W.2d 120. In construing statutes, we give the words used in the statute their plain, ordinary, and commonly understood meaning, unless they are specifically defined or contrary intention plainly appears. *State v. Ness*, 2009 ND 182, ¶ 8, 774 N.W.2d 254.

[¶6] "The due process clauses of the State and Federal Constitutions require definiteness of criminal statutes so that the language, when measured by common understanding and practice, gives adequate warning of the conduct proscribed and marks boundaries sufficiently distinct for judges and juries to fairly administer the law." *State v. Tweed*, 491 N.W.2d 412, 419 (N.D. 1992) (quoting *State v. Johnson*, 417 N.W.2d 365, 368 (N.D. 1987)) (citations omitted). A statute is unconstitutionally vague if it lacks "ascertainable standards of guilt, such that it either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application." *State v. Tibor*, 373 N.W.2d 877, 880 (N.D. 1985) (quotations and citations omitted). We have explained vague laws offend due process because they do not give fair warning and they allow for discriminatory enforcement:

> First, because we assume that man is free to steer between lawful and unlawful conduct, we insist that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly. Vague laws may trap the innocent by not providing fair warning. Secondly, if arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them. A vague law impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an ad hoc and subjective basis, with attendant dangers of arbitrary and discriminatory application.

*Id.* (quoting *Grayned v. City of Rockford*, 408 U.S. 104, 108-09 (1972)).

[¶7] However, as we noted in *State v. Schwalk*, 430 N.W.2d 317, 320 (N.D. 1988) (quoting *Rose v. Locke*, 423 U.S. 48, 49-50 (1975)):

> "It is settled that the fair-warning requirement embodied in the Due Process Clause prohibits the States from holding an

individual 'criminally responsible for conduct which he could not reasonably understand to be proscribed.' *United States v. Harriss,* 347 U.S. 612, 617 (1954); *see Wainwright v. Stone,* 414 U.S. 21, 22 (1973). But this prohibition against excessive vagueness does not invalidate every statute which a reviewing court believes could have been drafted with greater precision. Many statutes will have some inherent vagueness, for '[i]n most English words and phrases there lurk uncertainties.' *Robinson v. United States,* 324 U.S. 282, 286 (1945). Even trained lawyers may find it necessary to consult legal dictionaries, treatises, and judicial opinions before they may say with any certainty what some statutes may compel or forbid. *Cf. Nash v. United States,* 229 U.S. 373 (1913); *United States v. National Dairy [Products] Corp.,* 372 U.S. 29 (1963). All the Due Process Clause requires is that the law give sufficient warning that men may conduct themselves so as to avoid that which is forbidden."

[¶8] We have explained a law is not unconstitutionally vague if it meets the following two requirements:

(1) [T]he law creates minimum guidelines for the reasonable police officer, judge, or jury charged with enforcing the law, and (2) the law provides a reasonable person with adequate and fair warning of the prohibited conduct. A law is not unconstitutionally vague if the challenged language, when measured by common understanding and practice, gives adequate warning of the conduct proscribed and marks boundaries sufficiently distinct for fair administration of the law.

*Ness*, 2009 ND 182, ¶ 6 (quotations and citations omitted).

[¶9] Roehrich was convicted of harassment in violation of Fargo Municipal Code § 10-0322. The relevant portion of the ordinance states:

A person is guilty of an offense if, with intent to frighten or harass another, he:
> 1. Makes a telephone call anonymously or in offensively coarse language;
> 2. Makes repeated telephone calls or other electronic communication, whether or not a conversation ensues, with no purpose of legitimate communication; or

3

> 3. Communicates a falsehood in writing or by electronic communication and causes mental anguish.

Fargo Municipal Code § 10-0322.

A

[¶10] Roehrich argues the ordinance is unconstitutionally vague because it criminalizes telephone calls with "no purpose of legitimate communication" and "legitimate communication" is not defined. He claims his calls were for the purpose of legitimate communication because he contacted the officers about their handling of his son's car accident and traffic ticket and to inform the department about an officer's perjury, and none of the officers ever addressed or investigated his claim that an officer committed perjury. He contends it is not clear at what point communication that was legitimate changes to harassment under the ordinance.

[¶11] The phrase "legitimate communication" is not specifically defined in the ordinance, but the word "legitimate" is generally understood to mean "[g]enuine; valid." *Black's Law Dictionary* 1084 (11th ed. 2019). Although the phrase "no purpose of legitimate communication" may be subjective, the ordinance requires the person to act with a specific intent to be guilty of the offense. In *Screws v. United States*, 325 U.S. 91, 101 (1945) (plurality), the Supreme Court recognized "the requirement of a specific intent to do a prohibited act may avoid those consequences to the accused which may otherwise render a vague or indefinite statute invalid." The Court further explained, "[W]here the punishment imposed is only for an act knowingly done with the purpose of doing that which the statute prohibits, the accused cannot be said to suffer from lack of warning or knowledge that the act which he does is a violation of the law." *Id.* at 102. The specific intent element removes the possibility that a person could be unaware of his criminal conduct and provides a reasonable person with adequate and fair warning of the prohibited conduct. *See People v. Shack*, 658 N.E.2d 706, 712 (N.Y. 1995).

[¶12] The harassment ordinance requires the defendant to have the intent to frighten or harass to be found guilty. Making a phone call that arguably does

4

not have a legitimate purpose alone is not sufficient to violate the statute. The caller must make the phone call with the intent to frighten or harass another person. The combination of the specific intent element with the required conduct of repeated phone calls or other electronic communication with no legitimate purpose creates minimum guidelines for the reasonable police officer, judge, or jury and limits the dangers of arbitrary and discriminatory application. It also provides a reasonable person with adequate and fair warning of the prohibited conduct. We conclude the ordinance is not unconstitutionally vague on its face.

[¶13] Our decision is consistent with the decisions of other courts that have considered the constitutionality of similar laws. *See, e.g.*, *United States v. Lampley*, 573 F.2d 783, 787 (3d Cir. 1978) (holding federal telephone harassment statute was not unconstitutionally vague and actor cannot claim confusion on prohibited conduct when statute requires the actor to intend to perform acts of harassment); *von Lusch v. State*, 387 A.2d 306, 310 (Md. Ct. Spec. App. 1978) (holding intent element saves telephone harassment statute from any danger of being unconstitutionally vague); *Shack*, 658 N.E.2d at 712-13 (holding harassment statute criminalizing making a telephone call with the intent to harass, annoy, threaten, or alarm and with no purpose of legitimate communication was not unconstitutionally vague); *State v. Lakatos*, 900 S.W.2d 699, 701 (Tenn. Ct. App. 1994) (holding statute criminalizing telephone calls made without a legitimate purpose of communication was not unconstitutionally vague, statute included an intent requirement which limited the phrase "without a legitimate purpose").

B

[¶14] We also conclude the law is not unconstitutionally vague as applied to Roehrich. Roehrich may have initially called officers with the purpose of legitimate communication, but evidence in the record established he made hundreds of telephone calls to three officers over a period of two years and many of the calls had no purpose of legitimate communication.

[¶15] Fargo Police Officer Charles Sullivan testified he received more than 50 voicemail messages from Roehrich over the course of a year, the messages were

5

insulting and harassing, and many of the messages did not request Sullivan call him back or mention the traffic ticket Sullivan issued to Roehrich's son. Officer Jared Crane testified he was working in the police department's Office of Professional Standards when he had contact with Roehrich, he received a complaint from Roehrich in July 2017 related to his son's car accident, Crane investigated the complaint, he informed Roehrich there was no wrongdoing and no policy violations, and Roehrich demanded Crane change the accident report. Crane testified there was no legitimate reason for Roehrich to contact him after Crane investigated Roehrich's complaint and made a determination, but Roehrich continued to call and Crane told him multiple times to stop contacting him about the matter. He testified Roehrich continued to contact him almost daily, he believes he received more than 150 telephone calls from Roehrich, and a majority of the calls did not mention the accident report. Approximately 80 voicemails Roehrich left for Crane were admitted into evidence at trial, and Crane testified he received all but one of them after he told Roehrich to stop calling him. Officer Shane Aberle testified he worked in the Office of Professional Standards starting in September or October 2018, he received calls from Roehrich initially but the calls stopped for about six months and then started again in April 2019. He testified Roehrich called him approximately 30 times in April and May 2019. Evidence established an assistant city attorney sent Roehrich a cease and desist letter in October 2018, which advised Roehrich his telephone calls and voicemail messages consisting of offensive, coarse language and derogatory statements were harassing and had no legitimate purpose and a failure to immediately stop the harassing activities would result in criminal prosecution.

[¶16] Recordings of more than 120 voicemail messages Roehrich left for the three officers were admitted into evidence during the trial. The calls were repetitive and included name calling and profanity, allegations the officers were liars or corrupt and did not know how to do their jobs, and other similar statements. Roehrich acknowledged in voicemail messages he left for Crane and Aberle that he may be charged with harassment but that he was going to continue to call regularly, and he left a voicemail message for Crane stating, "I want to be charged with harassment. . . . Charge me. Go ahead. I'm waiting." Roehrich's voicemail messages often did not include any information about

Roehrich's complaints related to his son's car accident or contain requests for an officer to return his call. The evidence was sufficient to support a determination by the jury that Roehrich made repeated telephone calls with no purpose of legitimate communication and that Roehrich had an intent to frighten or harass another when he engaged in this conduct.

[¶17] In cases with comparable facts and circumstances, other courts have held harassment laws were not unconstitutional as applied to the defendant. *See, e.g., People v. Smith*, 392 N.Y.S.2d 968, 970 (N.Y. Sup. Ct. 1977) (holding harassment statute was not unconstitutionally vague as applied to defendant when defendant called police 27 times in three hours after he was informed that a certain matter was civil and not criminal and that he should not call the police again, even though the defendant initially called with a purpose of legitimate communication, it was clear that his intent as to the later calls was not to communicate but solely to harass).

[¶18] Using the plain and commonly understood meaning of "legitimate communication," under the facts and circumstances of this case a reasonable person would know Roehrich's conduct was prohibited by the harassment ordinance. We conclude the ordinance is not unconstitutionally vague as applied to Roehrich's conduct.

III

[¶19] Roehrich argues his speech was protected under the First Amendment and is excluded from criminal penalty.

[¶20] Whether an activity is constitutionally protected is a question of law, which is fully reviewable on appeal. *State v. Boyle*, 2009 ND 156, ¶ 8, 771 N.W.2d 604. When free speech arguments are made, we review the whole record to "ensure the judgment does not constitute a forbidden intrusion on free expression." *State v. Barth*, 2005 ND 134, ¶ 8, 702 N.W.2d 1.

[¶21] "The First Amendment generally prohibits the government from proscribing speech based on disapproval of its content." *In re H.K.*, 2010 ND 27, ¶ 13, 778 N.W.2d 764 (quoting *Svedberg v. Stamness*, 525 N.W.2d 678, 682

(N.D. 1994)). "However, there are limits on free speech and not all speech is protected." *State v. Brossart*, 2015 ND 1, ¶ 11, 858 N.W.2d 275.

[¶22] This Court has recognized "the First Amendment free speech clause gives the public a right to criticize the police, and even yell profanities at the police and make obscene gestures, without getting arrested solely for such speech." *State v. Bornhoeft*, 2009 ND 138, ¶ 11, 770 N.W.2d 270; *see also City of Bismarck v. Schoppert*, 469 N.W.2d 808, 811 (N.D. 1991) (stating the fact that words aimed at police officers were vulgar and offensive was not sufficient to remove them from protection of the First Amendment). But we have also recognized "[t]hat protection must, however, be distinguished from potentially disturbing or threatening conduct, even if the yelling contains vulgar language intended for a police officer." *Bornhoeft*, at ¶ 11. When the speech is combined with other conduct it may be the basis for a criminal charge. *See id.* at ¶¶ 11-13. The First Amendment may protect the content of the speech, but the conduct used in delivering the speech may not be protected. *See State v. Simon*, 2018 ND 197, ¶ 18, 916 N.W.2d 626 (stating our cases have recognized the content of a defendant's speech may be protected but the conduct may not); *In re A.R.*, 2010 ND 84, ¶ 12, 781 N.W.2d 644 (stating conduct accompanying the speech takes the speech outside of the First Amendment protections).

[¶23] Furthermore, speech that is an integral part of conduct in violation of a criminal statute and that has a sole immediate purpose of continuing a violation of law is not protected. *Giboney v. Empire Storage & Ice Co.*, 336 U.S. 490, 498-501 (1949). *See also Packingham v. North Carolina*, 137 S.Ct. 1730, 1737 (2017) (stating "[s]pecific criminal acts are not protected speech even if speech is the means for their commission."); *United States v. Stevens*, 559 U.S. 460, 468 (2010) (stating restrictions on the content of speech are permitted in a few limited areas, including speech that is integral to criminal conduct, and the prevention and punishment of these limited categories of speech do not raise any constitutional problems); *United States v. Gonzalez*, 905 F.3d 165, 192-93 (3d Cir. 2018) (holding defendant's internet postings and letters were not protected speech because they were integral to criminal conduct, the speech violated the cyberstalking statute because it served no legitimate purpose other than to harass and intimidate, and therefore it had the sole immediate

purpose of continuing a violation of law); *United States v. Sayer*, 748 F.3d 425, 434 (1st Cir. 2014) (holding cyberstalking statute was constitutionally applied to defendant and, to the extent the defendant's communications involved speech, the speech was not protected because it was integral to the criminal conduct, the speech only served to implement the defendant's criminal purpose, and the defendant did not show there was any lawful purpose of the communications that would take them outside the *Giboney* exception); *United States v. Petrovic*, 701 F.3d 849, 855 (8th Cir. 2012) (holding defendant's harassing and distressing communications were integral to his criminal conduct of extortion and therefore were not protected by the First Amendment); *State v. Gunn*, 2018 ND 95, ¶¶ 17-19, 909 N.W.2d 701 (holding statements were not protected by the First Amendment because they were integral to the commission of a crime).

[¶24] Evidence established Roehrich made hundreds of telephone calls to three officers, he was told to stop calling numerous times, he was sent a cease and desist letter, and he continued to call the officers after being told to stop. He stated in multiple voicemail messages that he would continue to call the officers until he was charged with harassment. The jury found Roehrich had an intent to frighten or harass when he called the officers, and Roehrich does not challenge the jury's findings. Under the facts of this case and when the totality of Roehrich's actions are considered, we conclude Roehrich's conduct was not protected by the First Amendment.

IV

[¶25] We affirm the order.

[¶26] Jon J. Jensen, C.J.
Gerald W. VandeWalle
Daniel J. Crothers
Lisa Fair McEvers
Jerod E. Tufte